

July 8, 2024

The Honorable J. Paul Oetken
United States District Judge
U.S. District Court for the Southern District of New York
40 Foley Square
Room 2102
New York, NY 10007

Re: *Briskin v. City of New York et al.*, No. 24 Civ. 03557-JPO

Dear Judge Oetken,

     I represent Plaintiffs Corey Briskin and Nicholas Maggipinto in this putative class action against the City of New York and four City officials (Defendants) who implemented the City's discriminatory policy that denies in-vitro fertilization (IVF) benefits to gay male employees and their spouses based on sex and sexual orientation in violation of federal, state, and local civil rights laws and federal and state constitutional provisions. *See* Complaint ¶¶ 1-15, ECF No. 5 ("Compl.").

     I write to oppose Defendants' unreasonable request for a 90-day extension to respond to the Complaint *beyond* the 60 days Defendants previously secured by waiving service and agreeing to respond by July 9, 2024. Defendants have not come close to meeting their burden to show "good cause" under Rule 6(b)(1)(A) to obtain a 90-day extension and a total of 150 days to respond. Defendants' sole purported basis for needing such a lengthy extension—that one of their lawyers was assigned to the case on June 21, 2024, and needs 108 *more* days to investigate the facts to formulate a response—is unsupported, unpersuasive, and self-inflicted due to the lack of diligence by Defendants' lead counsel, who received the Complaint on May 10, 2024, but waited 42 days to assign a more junior attorney. There is no plausible reason why the New York City Law Department, which has 850 lawyers and has actively worked on this matter since 2021 (including briefing the merits before a federal agency in May 2022), needs 150 days to formulate a response. In fact, the City has *already* offered a response through its June 18, 2024 testimony before the New York City Council. Moreover, a 90-day extension is an excessively long and unreasonable amount of time to respond to a complaint, particularly since Defendants' counsel have actively worked on the matter since 2021 and agreed to respond within 60 days (not 150). Delaying this case for several months will greatly prejudice hundreds to thousands of putative class members whose dreams of growing their families are being deferred and destroyed due to the City's discriminatory policy.

     The motion should also be denied due to the bad faith way that Defendants sought this extension, by: (1) refusing to confer until the last business day an extension request could be made; (2) refusing to compromise on anything short of a 90-day extension even after Plaintiffs' counsel proposed a two-week extension with a briefing schedule and invited a counter-proposal; and (3) attempting to mislead the Court into thinking that Plaintiffs refused to agree to *any* extension.

PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364 (o) / (718) 938-6132 (c)
peter@prf-law.com



**FACTUAL AND PROCEDURAL BACKGROUND**

Since 2021, the City and its counsel at the Law Department have known about the discriminatory policy Plaintiffs challenge in this action. In 2021, Plaintiffs requested IVF coverage from the City's Office of Labor Relations (OLR), which told them they were not "eligible for any IVF coverage under the City's healthcare plan, including for the retrieval and fertilization of eggs in a laboratory using their own sperm." Compl. ¶ 69. Later that year, Mr. Briskin made the same request to the Law Department and stated that denying gay male employees IVF coverage violated their civil rights. But Andrea O'Connor, then-Division Chief of the Labor and Employment Law Division of the Law Department, personally denied Mr. Briskin's request. *Id.* ¶¶ 70-71.

On April 12, 2022, Plaintiffs filed a sex discrimination class action charge against the City with the Equal Employment Opportunity Commission (EEOC)—a charge to which Mayor Adams personally and publicly responded in the media. *Id.* ¶ 73. In May 2022, the City filed a position statement with the EEOC responding to the charge. *Id.* ¶¶ 73-74. The City's position statement, signed by Lawrence Profeta, who is now the Law Department's Deputy Chief of the Labor and Employment Division, argued that gay men like Plaintiffs were "ineligible for any IVF benefits because the plan does not provide benefits to 'surrogates,'" although Plaintiffs "had made clear that they were not seeking reimbursement for *any* services provided to a surrogate". *Id.* ¶ 74. In 2023, the City continued to refuse to provide Plaintiffs with IVF benefits. *Id.* ¶ 76.

On May 9, 2024, because the City refused to change its discriminatory policy, Plaintiffs filed this class action lawsuit. On May 10, 2024, Plaintiffs' counsel asked Defendants' lead counsel, Mr. Profeta, to agree to waive service, which would afford Defendants up to 60 days to respond to the Complaint, *i.e.*, by July 9, 2024. On May 20, 2024, Mr. Profeta told Plaintiffs' counsel that the Law Department would waive service for all Defendants, and on May 30, 2024 he returned waivers for them. *See* ECF No. 6. When Mr. Profeta waived service and thereafter, he gave no indication that Defendants might need to request *any* additional time to respond beyond the 60 allotted days.

On July 1, 2024, eight days before the July 9 deadline for Defendants to respond to the Complaint, Shemori S. Corinthian, a Senior Counsel in the Law Department, informed Plaintiffs' counsel she wanted Plaintiffs to consent to a 90-day extension as a "professional courtesy so that [she] can obtain necessary information/documents to assess the claims set forth in the Complaint and prepare an adequate response." She offered no reason for this request other than that she "was recently assigned to handle the [] matter." Plaintiffs' counsel responded eight minutes later, proposing to meet and confer "in the next day or two" and stated he believed his clients would not consent to a "significant extension (i.e., more than a few weeks)" unless "there is good faith interest in settlement discussions." But Ms. Corinthian stated she could not meet on those days and did not make herself available to speak until July 5, 2024, just two business days before the July 9 deadline.

During the meet-and-confer with Ms. Corinthian on the afternoon of Friday July 5, 2024, the undersigned Plaintiffs' counsel explained that Plaintiffs believe a 90-day extension is inappropriate, particularly given that the Law Department already had 60 days to respond due to its waiver of service, the Law Department has worked on this case since 2021, and the Law Department has hundreds of attorneys. Plaintiffs' counsel offered two alternative proposals.



First, he proposed a briefing schedule in which Defendants would receive two additional weeks to respond to the Complaint (*i.e.*, by July 23, 2024), Plaintiffs would oppose any Rule 12 motion by September 13, 2024 (as Plaintiffs' lead counsel has a vacation from August 14 to 24 and is scheduling depositions during August), and Defendants would file any reply by September 27, 2024. Second, Plaintiffs' counsel proposed that if Defendants would agree to engage in good-faith settlement talks on a class-wide basis, Plaintiffs would agree to extend all deadlines by 90 days or even 120 days. Defendants' counsel responded by stating that she was not authorized to discuss settlement, thus rejecting the second proposal, and refusing to make any counter-proposal for a briefing schedule. Instead, she repeatedly stated that Defendants needed *another* 90 days to respond to the Complaint, although she said she did not know whether Defendants will move to dismiss or answer. Plaintiffs' counsel then repeated that Plaintiffs would entertain a counter-proposal to their proposed briefing schedule, but a 90-day extension was not reasonable or acceptable.

Two hours later, Defendants' counsel filed the instant request for a 90-day extension to respond to the Complaint, supported only by her representation that she had been assigned to the matter on June 21, 2024 (*i.e.*, 43 days after the Complaint was filed) and that the "requested extension of time is necessary to allow the undersigned to investigate the facts of the case, confer with the City's [OLR], and to formulate an appropriate response to the Complaint," ECF No. 8 at 1, despite the fact that the Law Department had actively worked on this matter since 2021. The motion stated that "Plaintiffs counsel did not consent to this proposed extension because counsel did not have authorization from the Plaintiffs" and because "Plaintiffs otherwise believe that the proposed extension is too long given Defendants' prior waiver of service," *id.*, but selectively failed to mention that Plaintiffs had made two alternative proposals to extend Defendants' response deadline and that Defendants refused to make *any* counter-proposal short of a 90-day extension.

## **ARGUMENT**

Federal Rule 6(b)(1)(A) permits a court to extend a deadline before it occurs, but only upon a showing of "good cause." Fed. R. Civ. P 6(b)(1)(A). Although Rule 6 does not describe what constitutes good cause (or a lack thereof), courts have concluded that good cause does not exist when the "moving party has been negligent, lacked diligence, [or] acted in bad faith". *ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, 2016 WL 7378778, at *3 (S.D.N.Y. Dec. 15, 2016) (cleaned up). Courts also consider whether the amount of time requested by the moving party is "unreasonable, improper, or a delay tactic". *Shukla v. Meta Platforms Inc.*, 2024 WL 248775, at *7 (S.D.N.Y. Jan. 8, 2024), *report and recommendation adopted*, 2024 WL 247108 (S.D.N.Y. Jan. 23, 2024) (approving a "single request for a thirty-day extension of time to respond to the Complaint").

Defendants' motion woefully fails to establish good cause for a 90-day extension that would give Defendants 150 days to respond to a complaint whose claims Defendants' counsel have actively worked on since 2021 and briefed before a federal agency in 2022. Defendants' only justification for a 90-day extension is that Ms. Corinthian was assigned to this case on June 21, 2024 and a 90-day extension is "necessary to allow [Ms. Corinthian] to investigate the facts of the case, confer with the City's [OLR], and to formulate the appropriate response to the Complaint." ECF No. 8 at 1. But Defendants offer no further support for this factual assertion, nor do they offer any legal authority or argument in support of their request for such a lengthy extension.

3



      Defendants' argument has no factual basis or merit. While Ms. Corinthian *personally* might need 30 days from the time that *she* was assigned the case to respond to the Complaint—not the 108 days she seeks—the Law Department did not assign her the case for 42 days after her supervisor, Mr. Profeta, received the waiver of service on May 10, 2024 (and later agreed to respond to the Complaint by July 9). This lack of diligence *alone* requires the denial of the City's 90-day extension request. Defendants do not even try to explain why Ms. Corinthian wasn't assigned for 42 days, why Mr. Profeta, the City's lead counsel on this case since April 2022, wasn't available to work on it, or why no other lawyers in the 850-attorney Law Department were either.

      Even more fatal to Defendants' argument is that the Law Department has *already* done the *very things* Defendants claim their counsel needs 108 more days days to do, which reveals that Defendants made this 90-day request in bad faith to improperly delay the litigation. Senior lawyers in the Law Department have actively worked on this matter since 2021, and during that time they investigated the facts, conferred with OLR, and formulated and gave responses to the claims to a federal agency. In fact, Mr. Profeta filed a brief with the EEOC in May 2022 that described the City's legal and factual positions on the claims, and he represented OLR's Chief Contracting Officer in a December 13, 2023 interview with the EEOC about the City's IVF policy. In addition to working on this matter for several years, the Law Department had two months of notice that this lawsuit would be filed because the Department of Justice issued a right to sue letter to Plaintiffs on March 7, 2024. *See* Compl. ¶ 27 & Ex. A. And belying Defendants' claim that they need 150 days to formulate a position on the Complaint, in May and June 2024, Mayor Adams issued numerous statements about the case to the media and on June 18, 2024, OLR's Deputy Commissioner testified in the New York City Council about the policy this action challenges.

      Because Defendants' conclusory argument is contradicted by the factual record and Defendants' purported need for any extension was caused by their own counsel's lack of diligence, the Court should deny this motion. But there are additional reasons why it should be rejected.

      *First*, a 90-day extension—beyond the 60 days Defendants obtained by waiving service—is an excessively long and unreasonable amount of time to respond to a complaint. It pales in comparison to extensions that courts in this District find permissible. *See, e.g.*, *Shukla*, 2024 WL 248775, at *7 (single 30-day extension to respond to complaint not "unreasonable"). And a total of 150 days to respond to the Complaint is highly unreasonable here, as Defendants' counsel have actively worked on this matter since 2021, Defendants are represented by one of the largest public law offices in the nation with 850 lawyers and 750 support professionals, and Defendants agreed to respond within 60 days by waiving service. Typically, when courts extend or stay deadlines by 90 days, it is because the parties jointly requested the extension or stay *and* they agreed to discuss settlement. *E.g.*, Joint Stipulation & Order, *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20 Civ. 04953-JPO, ECF No. 57. In fact, here Plaintiffs offered to stay all deadlines for 90 to 120 days if Defendants would discuss settlement, but Defendants declined to do so.

      Defendants' position seems to be that *anytime* the City or City officials are sued over a municipal policy or practice they automatically should get 150 days to respond. But that absurd position and Defendants' request here contravene the most fundamental principle of civil procedure: that the "rules . . . should be construed, administered, and employed by the court and



the parties to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, which applies with full force in deciding whether to grant an extension under Rule 6(b)(1)(A). *See Kleehammer v. Monroe Cnty.*, 2013 WL 1182968, at *18 (W.D.N.Y. Mar. 20, 2013) (citing 1 Moore's Federal Practice § 6.06[1][a] ("In order to secure the 'just, speedy, and inexpensive determination' of an action, a court might well deny a request for an extension of time.")).

*Second*, the Court should deny the motion due to the bad faith way that Defendants sought to obtain an extension and then tried to mislead the Court into thinking that *Plaintiffs* refused to agree to *any* extension. *ICBC*, 2016 WL 7378778, at *3 ("bad faith" bars a finding of "good cause" under Rule 6(b)(1)(A)). Defendants waited until eight days before the July 9 response deadline to ask Plaintiffs to consent to a 90-day extension, but then refused to meet and confer over the request until the last business day on which this Court's individual rules allow an extension request to be made. And during that meet and confer, Defendants' counsel refused to respond to Plaintiffs' reasonable proposal to give Defendants a two-week extension as part of a briefing schedule. Even when Plaintiffs' counsel repeatedly invited a counter-proposal on a briefing schedule, Defendants' counsel refused to compromise and two hours later filed a motion seeking a 90-day extension.

Furthermore, by stating in the motion that "Plaintiffs counsel did not consent to this proposed extension because counsel did not have authorization from the Plaintiffs," and because "Plaintiffs otherwise believe that the proposed extension is too long," without mentioning that Plaintiffs *did* agree to consent to a 14-day extension, Defendants sought to mislead the Court into believing that Plaintiffs had refused any extension and had failed to negotiate in good faith. This is unfortunate, especially since Plaintiffs' counsel asked Defendants' counsel to inform the Court in Defendants' motion that Plaintiffs had proposed a 14-day extension as part of a briefing schedule.

*Third*, Plaintiffs and the proposed Class Members will be greatly prejudiced by delaying this litigation for 90 days. Although this case could require several years of litigation, every month that goes by hundreds, if not thousands, of gay male City employees and their spouses are forced to defer their plans to grow their families biologically. *See* Compl. ¶ 79. The City's discriminatory policy already caused Mr. Briskin and Mr. Maggipinto to delay their plans to grow their family for five years. *Id*. ¶ 67. Because the City is continuing its discriminatory policy, it is critical that this case not be bogged down by unnecessary delay. In contrast, Defendants will suffer no prejudice by having to respond by the due date to which their counsel consented, even if that means answering rather than moving to dismiss. And due to Defendants' refusal to compromise on an extension, this Court will be prejudiced by having to waste judicial resources adjudicating this motion.

For all these reasons, the Court should deny Defendants' motion in its entirety. If the Court is inclined to approve *any* extension of time, Plaintiffs respectfully request that the Court approve the reasonable briefing schedule that Plaintiffs proposed, such that Defendants' Rule 12 motion or Answer would be due on July 23, 2024, Plaintiff's opposition to any Rule 12 motion would be due on September 13, 2024, and Defendants' reply would be due on September 27, 2024.

                                  Sincerely,

                                  Peter Romer-Friedman