

February 18, 2025

The Honorable Jeannette A. Vargas
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Briskin v. City of New York et al.*, No. 24 Civ. 03557-JAV

Dear Judge Vargas:

We represent Plaintiffs Corey Briskin and Nicholas Maggipinto in this matter. We write jointly with opposing counsel to provide a status update on the case per this Court's February 4, 2025 order. *See* ECF No. 22. We address each item set forth in the Court's order in turn below.

1. **Counsel's Contact Information**: All counsel are listed on the public docket and all contact information is up to date.

2. **Brief Statement of the Claims and Defenses**: Plaintiffs bring this case as a putative class action against the City of New York (City) and four City officials (Defendants) who implemented the City's discriminatory policy that denies in-vitro fertilization (IVF) benefits to gay male City employees and their spouses based on sex and sexual orientation in violation of federal, state, and local civil rights laws and federal and state constitutional provisions. *See* Complaint ¶¶ 1-15, ECF No. 5 ("Compl."). Plaintiff Briskin is a former New York County Assistant District Attorney and was enrolled in a health insurance plan provided by the City to employees of the City. When Mr. Briskin and his husband, Mr. Maggipinto, sought insurance approval for the IVF benefits necessary to conceive a biological child as a same-sex male couple, they were denied and told that coverage was not available to them under the City's healthcare plans. In contrast, when a City employee who is male and a plan participant seeks access to IVF in conjunction with his female partner, whether or not the female partner is a plan participant the City's healthcare plan covers IVF, including fertilizing eggs collected from the female partner or a donor using the sperm of the male employee/plan participant. *Id.* ¶ 53-56. Both Plaintiffs seek to represent a class of male City employees and their male spouses who were interested in seeking IVF coverage to grow their families but were denied coverage or deterred from seeking coverage due to the City's discriminatory policy. *Id.* ¶ 87 (the "Employees and Spouses Class"). Mr. Briskin seeks to represent an additional class of male City employees who were subject to the same disparate treatment (the "City Employees Class"). Shortly after the filing of this lawsuit, the City has publicly acknowledged to the New York City Council and this Court that the health plan that providers coverage to approximately 75% of City employees denied IVF coverage to male same-sex couples during the class period.

PETER ROMER-FRIEDMAN LAW PLLC

1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364 (o) / (718) 938-6132 (c)
peter@prf-law.com



Through this action, Plaintiffs seek to eliminate discrimination in the City's policy or practice for providing IVF to City employees and their spouses, as well as compensation for hundreds—and possibly thousands—of class members.

Defendants categorically deny Plaintiffs' allegations that the City discriminates against gay male employees and their spouses by denying IVF benefits based on sex or sexual orientation. The City does not control the medical criteria for IVF eligibility under its Health Benefits Program. Instead, coverage is governed by New York State Insurance Laws, regulations, and guidance from the State Department of Financial Services (DFS), which are implemented by the insurance carriers that administer the health plans available to City employees and their eligible dependents.

Under New York State regulations, individuals may qualify for IVF coverage if diagnosed with infertility. However, DFS guidance explicitly clarifies that same-sex couples do not need to establish an infertility diagnosis to be eligible for coverage. As a result, gay male employees and their spouses covered under the City's Health Benefits Program are entitled to IVF benefits without needing to prove infertility.

The Comprehensive Benefits Plan (CBP), which covers approximately 75% of City employees, is the plan at issue in this litigation. EmblemHealth administers the CBP, with Anthem managing care coordination and WINFertility, a subcontractor of Anthem, handling prior authorizations for infertility services. EmblemHealth, Anthem, and WINFertility establish their own policies based on their own interpretation of prevailing legal and medical standards. Although WINFertility initially required an infertility diagnosis for same-sex male couples seeking IVF services, it revised its policy in October 2023 to align with DFS guidance. It is crucial to emphasize that, at no point, were the Plaintiffs ever denied covered IVF services by WINFertility.

Defendants are steadfast in their commitment to ensuring that equitable healthcare benefits are available to all covered employees, as required by law. The unfounded suggestion that there may be hundreds or thousands of City employees who were unfairly denied IVF services is unsupported by any evidence.

**Jurisdiction and Venue**: Jurisdiction lies in this court because Plaintiffs assert constitutional claims under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and federal statutory claims under Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. There is supplemental jurisdiction over Plaintiffs' city and state claims under 28 U.S.C. § 1367(a), because Plaintiffs' claims under the New York State and City Human Rights Laws and the New York State Constitution are so related to the Title VII and federal constitutional claims in this action that they form part of the same case or controversy. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, where the City of New York's headquarters are located.



3. **Current Deadlines**: A list of current deadlines in the case are set forth below:

    a. All fact discovery shall be completed by January 16, 2026
    b. Depositions shall be completed by January 16, 2026
    c. Interrogatories shall be served by November 13, 2025
    d. Requests to Admit shall be served by November 13, 2025
    e. All expert discovery shall be completed by January 16, 2026
    f. All expert disclosures must be served by November 13, 2025
    g. Counsel must meet in person to discuss settlement by July 22, 2025

4. **Upcoming Conferences**: There are no current conferences scheduled with the Court. However, the parties met and conferred on a handful of discovery disputes on Thursday, February 13, 2025, and Plaintiffs anticipate bringing at least two motions to compel in the coming weeks. These motions will be filed in conformance with this Court's individual rules.

5. **Outstanding Motions:** There are no outstanding motions at this time. Plaintiff plans to file at least two motions to compel following the parties' February 13, 2025 meet-and-confer. Plaintiffs will file a motion for class certification after additional written and oral discovery has occurred, and, once a class is certified, Plaintiffs will move for summary judgment on all of their claims.

6. **Pending Appeals**: There are no pending appeals in this matter.

7. **Discovery to Date and Discovery that Would Facilitate Settlement**:

    **[Plaintiffs]** The parties have each served and responded to an initial Request for Production of Documents and an initial set of Interrogatories. Following those productions, the parties have met and conferred on a variety of discovery issues, some of which were resolved and some of which will require motion practice before the Court. The parties are also in the process of finalizing a protective order based on this Court's model order with minor additions to reflect the confidential information we collectively believe will be at issue in this case. The parties are also negotiating proposed ESI search terms, date ranges, and custodians, but that process has been delayed, as Defendants did not contact Plaintiffs to solicit their involvement in that process until last week—four months after Plaintiffs served their initial requests for production and interrogatories. No depositions have been taken at this time.

    Based on the parties' conferrals, it appears that Defendants have yet to produce the vast majority of documents that are responsive to Plaintiffs' initial discovery requests, because Defendants have not searched for or produced ESI other than the plan documents for the various health insurance plans. Plaintiffs have produced the majority of documents that are responsive to Defendants' initial discovery requests and that relate to this dispute and will make an additional production once the protective order is finalized.

Critical written discovery remains before the parties can engage in meaningful settlement negotiations, especially information that is needed to identify the potential class members. Defendants have refused to provide information of male City employees who have been married to a man during the class period (and are thus potential class members) other than those men who were on the same insurance plan as Plaintiffs. But the proposed classes include employees and spouses who were enrolled in *all* City healthcare plans that denied IVF coverage to gay men, not just the single plan in which Mr. Briskin and Maggipinto were enrolled. *See* Compl. ¶¶ 87-88. Defendants cannot unilaterally narrow the scope of Plaintiff's class by refusing to respond to discovery requests that are relevant and necessary to identify all of the class members. This dispute will be raised with the Court in a forthcoming motion to compel. Furthermore, Defendants have informed Plaintiffs that they do not keep data regarding requests for IVF coverage and/or any approvals and denials. As such, Plaintiffs will have to subpoena multiple third parties to obtain this information. While Defendants have responded to Plaintiffs' discovery requests by indicating that "third parties" have this data, they have refused to identify who those parties are and have requested that Plaintiffs serve an interrogatory specifically requesting that information. Plaintiffs will serve that interrogatory immediately, but this refusal to identify these necessary parties for discovery will cause additional delay.

**[Defendants]** Defendants disagree with Plaintiffs' assertion that they have failed to engage adequately in the discovery process or have delayed the production of relevant documents. Contrary to Plaintiffs' claims, Defendants have already produced most of the relevant documents in their possession and will continue to do so once inadvertently disclosed documents have been returned to Defendants and the protective order is finalized.

Notably, it was Plaintiffs—not Defendants—who failed to initiate discussions regarding ESI protocols. Defendants proactively requested that the parties confer on this issue, underscoring their commitment to an efficient and cooperative discovery process. Both parties share an equal obligation to preserve, search, and produce relevant ESI, and Plaintiffs' attempt to place sole blame on Defendants is both misleading and inaccurate.

Plaintiffs' request for information about all male City employees married to men across every City health plan during the class period is not only unduly burdensome but also wholly disproportionate to the needs of this case. As previously noted, 75% of City employees are covered under the CBP, and Defendants have already agreed to produce all relevant and responsive documents from that plan. Plaintiffs offer no evidence to suggest widespread denials of IVF coverage across all City health plans. Expanding discovery beyond the CBP would needlessly complicate the case, inject irrelevant information, and impose an unjustified intrusion into the privacy of City employees. Accordingly, discovery should be narrowly tailored to the CBP, as it directly pertains to the claims in this case.



Moreover, Plaintiffs' accusation that Defendants have obstructed access to third-party information is baseless. Notably, in their interrogatories, Plaintiffs never sought the identity of the insurance carriers providing IVF services to City employees—the proper avenue for such inquiries. Defendants are not withholding this information but have consistently stated that third parties may possess relevant data. Defendants remain willing to cooperate in identifying these entities once Plaintiffs make a formal interrogatory request that will be answered and verified by our client agency rather than relying on information provided by counsel.

Defendants are fully committed to complying with their discovery obligations and will continue to work in good faith to ensure that all relevant materials are disclosed in a timely and efficient manner. However, the overbroad and burdensome nature of Plaintiffs' requests warrants a more narrowly tailored approach to discovery.

8. **Prior Settlement Discussions**: The parties were referred to the SDNY Mediation program by Judge Oetken and met with mediator Holly Weiss in October 2024. The parties set a tentative mediation date for March 10, 2025 with the hope that Plaintiffs could obtain important discovery about the size of the classes and their damages by that time. That process has been complicated by discovery disputes and the need for third-party discovery. As a result, the parties believe that mediation would be more fruitful at a later date. The parties respectfully request that the Court adjourn the mediation currently scheduled for March 10, 2025 until a later date after the parties' discovery disputes have been resolved and the parties have been able to obtain necessary discovery from third parties as explained above.

9. **Alternative Dispute Resolution**: As noted in response to request No.9, the parties have been referred to the District's mediation program and have a mediation scheduled for March 2025. The parties will request an adjournment of that mediation, but hope to proceed with mediation before Ms. Weiss once Plaintiffs have obtained additional class discovery. The parties will notify the Court once sufficient class discovery has been completed that they believe a mediation would be fruitful.

Sincerely,

*/ s / Peter Romer-Friedman*  /s/ Shemori  S. Corinthian
*/s/ David Berman*

Peter Romer-Friedman  Shemori Corinthian
Patrick David Lopez  Assistant Corporation Counsel
David Berman

*Attorneys for Plaintiffs*  *Attorney for Defendants*

5