

April 30, 2025

The Honorable Jeannette A. Vargas
United States District Judge
500 Pearl Street
New York, NY 10007

      Re:    *Briskin v. City of New York et al.*, No. 24 Civ. 03557-JAV

Dear Judge Vargas:

      We represent Plaintiffs Corey Briskin and Nicholas Maggipinto in this matter. We submit this letter to raise two discovery disputes in accordance with Section 6.A of your Honor's individual rules. The parties met and conferred over these disputes twice via videoconference. The first meeting occurred on February 13, 2025, at 10:00 a.m. for about 30 minutes. David Berman attended the call for Plaintiffs and Shemori Corinthian for Defendants. The parties also conferred on March 25, 2025, at 3:00 p.m. for about one hour. Peter Romer-Friedman and David Berman attended for Plaintiffs and Shemori Corinthian for Defendants. The parties then exchanged follow-up emails regarding certain documents related to their disagreements and were able to narrow the scope of the dispute. Plaintiffs' counsel made clear during the second call and in follow-up emails that they believed the parties were at an impasse on the issues below and would move to compel.

***Factual Background.*** Plaintiffs bring this case as a putative class action against the City of New York and four City officials (collectively the "City"). The lawsuit challenges the City's discriminatory policy that denies in-vitro fertilization ("IVF") benefits to gay male City employees and their spouses based on sex and sexual orientation in violation of federal, state, and local law. Complaint ¶¶ 1-15, ECF No. 5 ("Compl."). Plaintiff Briskin is a former New York County Assistant District Attorney and was enrolled in the EmblemHealth Comprehensive Benefits Plan, underwritten by GHI ("GHI Plan") and offered by the City. When Mr. Briskin and his husband, Mr. Maggipinto, sought insurance approval for the IVF benefits, they were told by the City that coverage was not available to gay men under the City's healthcare plans, and they and other gay men were denied IVF benefits for years. In contrast, when a male City employee seeks access to IVF in conjunction with his female partner, whether or not the female partner is also a plan participant, the City's healthcare plan covers IVF benefits, including fertilizing eggs collected from the female partner or a donor using the sperm of the male employee. *Id.* ¶ 53-56. The named Plaintiffs seek to represent a class of male City employees and their male spouses who were interested in seeking IVF coverage to grow their families but were denied coverage or deterred from seeking coverage due to the City's discriminatory policy. *Id.* ¶ 87 (the "Employees and Spouses Class"). Mr. Briskin seeks to represent an additional class of male City employees who were subject to the same disparate treatment (the "City Employees Class").

**Dispute Regarding Appropriate Class Discovery.** The first dispute concerns the scope of class discovery and whether Defendants can unilaterally rewrite Plaintiffs' class definition to limit the class to City employees who received benefits from a single insurance plan.

**PRF**
L A W

Plaintiffs have defined the Employees and Spouses Class to include (1) all gay men who were employed by the City during the relevant time frame and their spouses; (2) who were eligible to participate in a City healthcare plan; (3) who were interested in undergoing IVF, but (4) were not eligible to receive IVF services. Compl. ¶ 87. The City Employees Class definition is the same but limited to City Employees. *Id.* ¶ 88. To assess the potential size of this class and identify potential members of the Classes, Plaintiffs have requested documents that would allow them to identify all men with male spouses employed by the City who were eligible to participate in any City health insurance plan during the requisite time frame, *see* Ex. A Requests Nos. 13 & 14. Defendants have produced this data for the GHI plan in which Plaintiffs were enrolled—which identified approximately 900 male employees with male spouses on the same health plan as Plaintiffs—but have refused to produce the same information for any other plan. *Id.*

Plaintiffs also requested documents sufficient to identify all requests for coverage for IVF services by persons on any City health insurance plan, the marital status and sexual orientation of the requester, and whether the request was approved or denied. Ex. A Request No. 15. The City responded that it did not keep this information, *id.*, and, during the February 13 meet-and-confer, told Plaintiffs they would need to serve an interrogatory to identify the appropriate entities to subpoena. Plaintiff served this interrogatory to obtain this information for all health plans per their proposed class definition, Ex. B, and once again Defendants refused to identify contact information for any plan beyond the GHI Plan. *Id.*

Defendants concede that they possess the same information they already produced for the GHI plan for all the other City health plans, but they have refused to produce that information, claiming it would be unduly burdensome because 75% of City employees, including Plaintiffs, are on the GHI Plan. *See* ECF No. 23. (During the Parties' March 25 meet-and-confer, Defendants stated that they stood on what was written in the parties February 18 joint status letter with respect to this issue.) In other words, they insist that they should be able to cut Plaintiffs' prospective class by 25%. While Defendants claim that "Plaintiffs offer no evidence to suggest widespread denials of IVF coverage across all City health plans," *id.*, that is precisely why Plaintiffs should be entitled to discovery to ascertain the size and scope of their prospective class.

Pre-class certification discovery "is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate." *Rahman v. Smith & Willensky Rest. Grp., Inc.*, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007). "The discovery permitted must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy." *Marin v. Apple-Metro, Inc.*, 2023 WL 2060133, at *3 (E.D.N.Y. Feb. 8, 2023) (cleaned up). Discovery to determine the scope of the class in question is routinely granted. *See Fulton v. City of New York*, 2023 WL 130826, at *3 (E.D.N.Y. Jan. 9, 2023); *cf. Thomas v. Colgate-Palmolive Co.*, 2024 WL 5200022, at *4 (S.D.N.Y. Dec. 23, 2024) ("Of course, plaintiff's assertion of numerosity may be undermined at class discovery, but that is precisely the purpose of class discovery: to develop a more complete factual record upon which the court may decide whether Rule 23(a) is satisfied.") (cleaned up).

Plaintiffs have pled a class of all City employees and their spouses that were denied access to IVF services, and they are entitled to take discovery that would be necessary to move to certify

2



*that class*, including information on how multiple plans applied the same unlawful practice to the putative Class Members and the people potentially impacted at each plan. There can be no dispute this information is relevant to certifying a class here. Not only have Plaintiffs alleged that the City has applied the same policy that extended beyond the GHI Plan, Comp. ¶¶ 1-5, but also, in July 2024, the City told the City Council that gay men who worked for the City had been denied IVF benefits based on a definition of infertility that he suggested occurred for multiple "carriers," *i.e.*, health plans, that worked with WINFertility. (Ex. C Ltr. of Daniel Pollak, First Deputy Commissioner, Office of Labor Relations to Chair Lynn Schuman (July 18, 2024)).

Defendants' assertion that it would be overly burdensome to produce discovery on all the health plans is puzzling and absurd, as Defendants claim that 75% of City employees are on the GHI plan and they have already produced the requested discovery for that plan. Any additional burden to simply provide the same information for the plans used by the other 25% of City employees should be a marginal addition to the discovery that Defendants have already produced.[1]

Judge Pollak's analysis in *Heggs v. City of New York*, 2019 WL 13294646 (E.D.N.Y. Mar. 11, 2019), is instructive. There, the named Plaintiff was a person in a wheelchair who alleged that he was denied reasonable accommodations when he was arrested and processed by the NYPD. *Id.* at *4. While the named Plaintiff used a wheelchair, Plaintiffs defined their class to include all persons with mobility disabilities. When the City tried to limit class discovery only to people in wheelchairs, Judge Pollak rejected that unilateral reframing of the class, explaining that "[t]he City's argument that numerosity cannot be established based on the 23 individuals identified by the CJB *ignores the definition of the class proposed by plaintiffs*, limiting the statistics to individuals with wheelchairs, *but not considering others* with mobility disabilities *who may have suffered the same types of indignities described by plaintiffs in the Complaint." Id.* (emphasis added). So too here, the City seeks to rewrite Plaintiff's class definition to limit the class to those in the identical circumstances as the Plaintiffs. As in *Heggs,* the City's attempt restrict the size of the potential class pre-discovery should be rejected.

**Dispute Over Defendants' Interrogatory Responses.** Second, Defendants have refused to respond to four of Plaintiffs' interrogatories by taking an inappropriately broad interpretation of Local Rule 33.3. Rule 33.3(b) provides that "[d]uring discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition . . ." Plaintiffs has served four interrogatories for which they believe interrogatories are the "more practical method of obtaining the information sought." They request that the City identify:

- (1) When the City first became aware that gay men were being denied access to IVF benefits (Ex. D at Interrogatory No. 2);

---

[1] Defendants' refusal to simply identify the third parties who possess data regarding approvals and denials of requests for IVF services from gay men beyond the GHI Plan is even more incredible.  All Plaintiffs have requested is for Defendants to identify the parties who have the data and information Plaintiffs have asked for (and that Defendants assert they don't keep) so that Plaintiffs can issue subpoenas to those third parties. Simply identifying these parties is no burden on Defendants, and, if the third parties in question believe Plaintiffs' subpoena is overly burdensome, Plaintiffs can negotiate with those parties directly or those parties can seek relief from this Court. Defendants have offered no explanation for this refusal to merely identify third parties and their contact information.

3



- (2) Any actions the City took in response to this problem once it became aware of it; (*id.* at Interrogatory No. 3);
- (3) Any investigation that the City performed to respond to Plaintiffs' inquiry as to whether they would be eligible for IVF Benefits (*id.* at Interrogatory No. 12);
- (4) Any actions that the City took to change or modify its practices with respect to gay employees' access to IVF services (*id.* at Interrogatory No. 13).

The City has responded to all these requests stating that "Defendants further object as this interrogatory seeks information that exceeds the scope of Local Civil Rule 33.3 and accordingly Defendants are withholding information responsive to this interrogatory." While Defendants rely on Rule 33.3, Defendants refused to address what the more proper form of discovery would be for this information during the parties' meet-and-confers. Defendants could not identify any documents they have produced that might respond to these requests, and when pressed by Plaintiffs as to whether they would be able to present at 30(b)(6) witness with knowledge on these topics, Defendants refused to respond, instead making vague declarations that these interrogatories were beyond the scope or Rule 33.3. When Plaintiffs tried to inquire as to what process Defendants had undertaken to try to respond to these interrogatories, Defendants refused to offer any information.

Plaintiffs acknowledge that Rule 33.3 limits the scope of Interrogatories in this District. But it is clear on the face of the rule that those limits only apply if there is a "more practicable means" of providing the requested discovery. Defendants have refused to identify a more efficient means despite multiple chances, and Plaintiffs should receive responses to their Interrogatories for that reason alone. Defendants have likely refused to provide a more practical method because none exists. The City is a vast bureaucracy with high turnover, particularly during changes in administrations, and the proposed class period extends back to 2019. *See* Compl. ¶ 88. Defendants have not produced any responsive documents on these subjects, and it is probable that no single witness will clearly recall when the City became aware of these issues or the specific steps that they took in response. As the Complaint alleges, the City became aware of the issues no later than 2021 when Plaintiffs contacted the Office of Labor Relations during the de Blasio Administration, Comp. ¶ 69, and Plaintiffs are entitled to understand when the City first learned of this issue and how it responded since 2019. Courts regularly allow interrogatories in analogous circumstances where it would not be reasonable to rely on any single witness to recall specific sequencing of events that occurred years prior and when Defendants can offer "comparatively simple responses" rather than "long narrative answers." *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788680, at *3 (S.D.N.Y. Oct. 28, 2013); *see also Madanes v. Madanes*, 186 F.R.D. 279, 290 (S.D.N.Y. 1999).

Plaintiffs are simply asking Defendants to identify when they became aware of certain information and identify actions taken in response. These are discrete actions that can be idented without long narrative answers and are far more likely to be accessible through a collection of witnesses and information in the City's possession rather than any single witness.

Respectfully submitted,

/s/ Peter Romer-Friedman            /s/ David Berman