

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

SHEMORI CORINTHIAN
Labor and Employment Law Division
(212) 356-4076
scorinth@law.nyc.gov

May 7, 2025

**BY ECF**

Honorable Jeannette A. Vargas
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 706
New York, NY 10007

      Re:   <u>Briskin, et al. v. City of New York, et al.</u>
             Docket No. 24-cv-03557(JAV)

Dear Judge Vargas:

      I am an Assistant Corporation Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, and I represent Defendants in the above-referenced matter. Pursuant to Rule 6 of Your Honor's Individual Practice Rules, I write in opposition to Plaintiffs' April 30 letter motion to compel discovery. Plaintiffs seek information related to City health plans not at issue in this case and demand interrogatory responses that violate Local Civil Rule 33.3. Both requests should be denied.

    **A. Factual Background**

      The City does not control the medical criteria for IVF eligibility under its Health Benefits Program. Coverage is governed by New York State Insurance Law, regulations, and guidance from the Department of Financial Services (DFS), and is implemented by the insurance carriers that administer the health plans available to City employees and their dependents. Under State regulations, individuals may qualify for infertility treatments, if diagnosed with infertility. However, DFS guidance makes clear that same-sex couples do not need an infertility diagnosis to be eligible for such services. Accordingly, gay male employees and their spouses covered under the City's Health Benefits Program are entitled to IVF benefits without first demonstrating an infertility diagnosis infertility. This information was conveyed to Plaintiffs in documents produced in January 2025, including the City's Summary Plan Description, which outlines the health benefits available to all City employees. <u>See</u> Excerpt of New York City Summary Plan Description, annexed hereto as Exhibit 1.

The plan at issue in this litigation is the Comprehensive Benefits Plan (CBP), which covers approximately 75% of City employees and was the plan under which Plaintiffs were enrolled during Plaintiff Briskin's employment. The CBP is administered by EmblemHealth, with Anthem managing care coordination and WINFertility, a subcontractor of Anthem, handling prior authorizations for infertility services to ensure that such services are medically necessary for a plan participant. EmblemHealth, Anthem, and WINFertility, who are not parties to this action, each establish their own policies based on their interpretation of applicable legal and medical standards. While WINFertility initially required an infertility diagnosis for same-sex male couples seeking IVF, it revised that policy in October 2023. See Exhibit C. Notably, Plaintiffs were never denied IVF coverage—either while WINFertility's policy was in effect or afterward. In fact, Defendants have produced documents confirming that Plaintiff Briskin was approved for IVF services as of October 2023.

### B. Class Discovery Must Be Proportional and Reasonably Tied to Plaintiffs' Claims

At the outset, Plaintiffs' proposed class definitions are not limited to same-sex male employees or their eligible dependent spouses who were actually denied IVF services on a discriminatory or impermissible basis. Instead, they broadly target an undefined group of gay male employees and spouses who merely expressed interest in IVF but were deemed ineligible for any reason. As Plaintiffs acknowledge, Defendants do not possess information identifying such individuals. See Plaintiffs' Letter Motion at p 2. Nonetheless, Defendants have already provided the names and addresses of the CBP insurance carriers, enabling Plaintiffs to subpoena third parties that may maintain records of any IVF coverage denials involving same-sex couples, including the identities of those denied and the reasons for the denials. Plaintiffs have already successfully served the CBP insurance carriers with subpoenas. For the first time in their April 30 letter, Plaintiffs object to not having received the names of insurance carriers for non-CBP plans. Now that Defendants are on notice of this concern, they are willing to provide that information. Because Plaintiffs can obtain responsive data directly from third parties who actually maintain it, no further production should be required from Defendants.

Moreover, Defendants are not attempting to "rewrite" Plaintiffs' class definitions. Rather, Defendants are seeking to ensure discovery remains proportional and protective of the privacy rights of City employees. Plaintiffs' document demands are overbroad, requesting the full names, addresses, phone numbers, and emails of employees who could not have been impacted by WINFertility's temporary IVF policy because they are not enrolled in the CBP and thus were never subject to that policy. Plaintiffs also mischaracterize the City's July 2024 correspondence to Council Member Lynn Schulman. Contrary to Plaintiffs' assertion, the City clearly stated that only plans with IVF prior authorizations managed by WINFertility required an infertility diagnosis for same-sex male couples while other plans did not. See Exhibit C . As such, Plaintiffs' request for identifying information of all same-sex male employees across all City health plans during the class period is overly intrusive, burdensome, and unsupported by any evidence suggesting systemic denial of IVF services across plans and represents a mere fishing expedition on Plaintiffs' part. See Walsh v. Top Notch Home Designs Corp., No. CV 20-05087 (GRB) (JMW), 2022 U.S. Dist. LEXIS 143801, at *18 (E.D.N.Y. Aug. 11, 2022) ( In the Second Circuit, discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support that goes beyond the realm of pure speculation.) Despite these concerns, Defendants have already agreed to provide

responsive information, including the names of same-sex male employees and their spouses enrolled under the CBP, the plan which covers the vast majority of the City's workforce. This, along with the information that Plaintiffs will be able to obtain from the relevant third parties, is more than sufficient for Plaintiffs to evaluate the scope of their putative classes and to decide on whether they can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Accordingly, Plaintiffs' request to compel further discovery regarding City employees and their spouses not enrolled in the CBP should be denied.

### C. Plaintiffs' Interrogatories Violate Local Civil Rule 33

Plaintiffs concede that Interrogatories 2, 3, 12, and 13 violate Local Civil Rule 33.3(a), which limits interrogatories at this stage to requests for "the names of witnesses," "the computation of damages," and "the existence, custodian, location, and general description of relevant documents." See Local Civil Rule 33.3(a). These interrogatories improperly seek narrative and detailed responses regarding the actions taken by the City and its employees in response to claims of discrimination against same-sex male employees. Because these requests plainly exceed the scope of Local Civil Rule 33.3, Plaintiffs' motion to compel must be denied. See Rouviere v. Depuy Orthopaedics, Inc., No. 1:18-cv-04814 (LJL) (SDA), 2020 U.S. Dist. LEXIS 40608, at *5 (S.D.N.Y. Mar. 8, 2020) (denying Plaintiff's motion to compel interrogatory responses where the requests exceeded the scope of Local Civil Rule 33.3).

Furthermore, Plaintiffs' assertion that interrogatories are the most efficient means of obtaining this information is incorrect. A more appropriate and efficient alternative would be for Plaintiffs to obtain this information through a Rule 30(b)(6) deposition of a City-designated witness. Contrary to Plaintiffs assertions, during the March 27 meet and confer, defense counsel did not refuse to answer any inquiries about whether Defendants would be able to present a 30(b)(6) witness with knowledge on these topics. Rather, Defense counsel refused to answer inappropriate questions posed concerning communications between counsel and the named Defendants. Defense counsel was not opposed to provide a 30(b)(6) witness for the topics, but merely explained that Defendants could not draft deposition topics for Plaintiffs. If Plaintiffs proceed with serving a 30(b)(6) notice, Defendants are willing to meet and confer to discuss its scope and designate witnesses best suited to testify on the requested topics. Accordingly, Plaintiffs' request to compel interrogatory responses should be denied.

Respectfully Submitted,

By: /s/ *Shemori S. Corinthian*
Shemori S. Corinthian

cc:  Peter Romer-Friedman, Esq **(BY ECF)**
 Peter Romer-Friedman Law PLLC
 1629 K Street NW, Suite 300
 Washington, DC 20006
 peter@prf-law.com