

December 12 , 2025

The Honorable Jeannette A. Vargas
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Briskin v. City of New York et al.*, No. 24 Civ. 03557-JAV

Dear Judge Vargas:

    We represent Plaintiffs Corey Briskin and Nicholas Maggipinto in this civil rights class action lawsuit. We submit this letter to raise an additional discovery dispute in advance of the parties' December 16, 2025 discovery conference before the Court. The factual background of the case and the procedural background of the parties' disputes regarding the scope of Defendants' ESI searches are set forth in Plaintiffs' December 1, 2025 Motion to Compel. *See* ECF No. 38.

***Background of Dispute***

    Plaintiffs served their First Requests for Production of Documents on October 1, 2024 in which they requested, *inter alia*, (1) documents concerning requests for IVF services by same-sex male couples on City health plans, and (2) any complaints from City employees about access to IVF services under a City health plan. *See* ECF No. 38, Ex. A (RPD Nos. 15-17). This information is relevant to liability, damages, and class certification, especially since class members' requests and complaints will help to establish that the City had a practice of denying IVF benefits to gay men and the City was long aware of this discrimination. Compl. ¶¶ 1-15, 69-71, ECF No. 5.

    To date, Defendants have not produced any documents that are responsive to these requests, other than documents related to the named Plaintiffs. The parties' counsel have conferred several times about these requests and exchanged correspondence about them. But Defendants have refused to search for any responsive complaints or requests about IVF services by gay male employees *except* within the three agencies they have already agreed to search—the Office of Labor Relations, the Mayor's Office, and the Manhattan District Attorney's Office (where Briskin worked), even though *only 4%* of the potential class members worked for those three City agencies.

    On December 1, 2025, after months of negotiations on this topic and ESI more broadly, the City produced a list that identifies the agency of employment for all potential class members employed by the City—*i.e.*, all male employees with a same-sex spouse or partner enrolled in a City-sponsored healthcare plan since 2019. In negotiating with the City over the production of this list, Plaintiffs' counsel made clear that this list would help the parties to identify the City agencies where the largest number of putative class member employees worked so that Defendants could, in turn, focus their ESI searches for inquiries, complaints, and other responsive documents at the largest agencies that employed putative class members. *See* ECF No. 38, Exs. B-C.



The list the City produced on December 1, 2025 contains information on 1,324 current and former City employees, as well their respective spouses. Those 1,324 employees worked for over 65 agencies. But 67% of those employees worked for just 10 agencies, each of which has at least 34 potential class members. The agencies are (1) the Police Department (235 potential class members); (2) Department of Education (194); (3) Fire Department (84); (4) Department of Health/Mental Hygiene (82); (5) HRA/Department of Social Services (76); (6) Department of Transportation (52); (7) Department of Parks & Recreation (46); (8) NYC Housing Authority (45); (9) Department of Sanitation (41); and (10) Administration for Children's Services (34).

After receiving and analyzing this list, Plaintiffs asked Defendants to narrowly search for requests, inquiries, and complaints about IVF for gay men at the 10 agencies that employ the most putative class members, and any responses by those agencies—again, documents that Plaintiffs requested in RPD Nos. 15-17 on October 1, 2024. Plaintiffs proposed that Defendants could limit their search to custodians at those agencies who would be likely to receive such inquiries or complaints, like HR or Legal. And they clearly stated that they are not asking Defendants to search within these agencies for *all* documents related to the IVF dispute at the center of the litigation, as Defendants agreed to do for the Mayor's Office, Office of Labor Relations, and DA's Office.

The City responded that it would not conduct any search for complaints, inquiries, or requests for IVF at the 10 largest agencies that employ potential class members—or any other agencies besides the Mayor's Office, OLR, and the Manhattan DA. The only rationale the City offered was that its counsel had no information at this time that any complaints or inquiries were made about IVF for gay men at those 10 agencies, while acknowledging that the City's counsel had made no inquiry into whether such documents exist in the first place. (Relatedly, the City has conceded that it has not imposed a litigation hold at any of those 10 agencies, so it is possible that documents have been destroyed since the City learned about this potential litigation in 2021).

On Wednesday December 10 2025, Plaintiffs' counsel offered to meet-and-confer again on this issue, but stated that if they did not hear from Defendants' counsel by the morning of Friday December 12, 2025, they would construe Defendants' prior response as a refusal to search for these documents and move to compel immediately so that the Court has the option to address this issue at the December 16, 2025 conference (or thereafter). As of this filing, Defendants have not responded to Plaintiffs' email offering to meet-and-confer one final time on this issue. The parties' full email correspondence surrounding this dispute following the production of the list on December 1, 2025, is attached as Exhibit A.

### *Defendants Should be Compelled to Search for and Produce Requests, Inquiries, and Complaints About IVF Services for Gay Men*

Defendants should be compelled to search for responsive complaints, inquiries, and requests at the 10 agencies that employ the largest number of potential class members. Those agencies collectively employ 67% of the 1,324 employees in the putative class and are the agencies most likely to have received complaints, inquiries, or requests about access to IVF for gay men. Defendants do not dispute the relevance of this information, and any such complaints or inquiries are clearly relevant to the City's pattern or practice of discrimination that Plaintiffs challenge, including when the City became aware of its discriminatory policy, what actions the City took in response, and which City employees were impacted by that policy. The City has not identified any

**PRF**
L A W

meaningful burden to justify not conducting this search for highly relevant information. And Plaintiffs' counsel have suggested constructive ways to limit the universe of responsive documents, including only searching custodians who would be likely to receive or respond to employees' complaints and/or searching for the names of the putative class members at each agency and IVF.

Instead, it appears that the City *once again* is attempting to unilaterally and artificially limit the scope of the class—here to people employed by three agencies (just 4% of the proposed class)—rather than properly responding to discovery about the proposed city-wide class that Plaintiffs amply pled in their complaint. In a prior order, this Court held that Defendants could not refuse to identify proposed class members who were enrolled in different health plans than the named Plaintiffs, because "'Plaintiffs 'are entitled to take discovery that would be necessary to move to certify.'" Order at 6, ECF No. 31 (quoting *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 421 (S.D.N.Y. 2014)). Just as "Plaintiffs [we]re entitled to obtain discovery to determine whether employees who participated in plans other than the CBP were denied coverage for IVF treatments," *id.*, here Plaintiffs are entitled to obtain discovery on the complaints and inquiries of employees who worked at other agencies.

Furthermore, Defendants have suggested at the initial Case Management Conference and in filings that they are not the appropriate defendants in this dispute and that the entities responsible for the discrimination at issue are the insurance companies and/or fertility providers that contracted with the City to provide IVF services to City employees. *See, e.g.*, ECF No. 42 at 1-2. This is wrong as a matter of law, because the City is liable for the acts of its agents under New York City law, *see* N.Y.C. Admin Code § 8-107 (prohibiting discrimination by "an employer . . .or agent thereof"); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 292 (S.D.N.Y. 2024) (discussing liability for the acts of an agent under the NYCHRL). But since this argument appears to be the City's defense to liability, Plaintiffs are entitled to obtain discovery to prove that the City was directly responsible for and participated in the discrimination at issue—because the City and its officials knew for years that the City's health plan was categorically denying gay men IVF benefits, yet did nothing to require equal treatment for those gay male employees. *See* ECF No. 5 ¶¶ 69-71 (describing how in 2021 Plaintiff Briskin asked OLR and the City's Law Department to change the City's policy so that gay men could receive IVF benefits, but his requests were denied). The complaints and inquiries at issue in this motion will help to establish when Defendants became aware of this discriminatory policy and what role they played in continuing that policy.

Similarly, Defendants have repeatedly argued in meet-and-confers that gay male employees who did not submit a formal request to the City's health insurance plan for IVF coverage cannot establish discrimination claims. This also is wrong as a matter of law. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("If an employer should announce his policy of discrimination… his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."). But in light of that expected defense, Plaintiffs are surely entitled to obtain discovery to show that some gay male employees did not formally apply for IVF benefits from their health insurance plan because they believed they were not be eligible for IVF coverage, including when they contacted the City and were told—like Plaintiff Briskin—that gay men were ineligible for IVF benefits.

Rather than dispute relevancy, Defendants argue that they should not have to search for these documents—or even make an inquiry into whether such documents might exist—because



Plaintiffs have not *proven* that any such communications *do* exist at those 10 agencies. But this argument turns the Court's discovery rules on their head by making a plaintiff prove that a defendant possesses a particular document that is relevant to the dispute before the defendant will have any obligation to search for that document or even identify potential custodians. Indeed, the primary purpose of running tailored searches is to ascertain whether relevant communications exist that are responsive to a party's discovery requests. Defendants' position that they only need to search for documents that Plaintiff can prove exist **prior to the search** is an incredible distortion of their discovery obligations. *See* S.D.N.Y. Local R. Civ. P. 26.4(b) ("[d]iscovery requests must be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have such information or can obtain them from the client"); *DaCosta v. City of New York,* 296 F. Supp. 3d 569, 596 (E.D.N.Y. 2017) (citing to local rule and stating that "requires cooperation from opposing counsel in discovering critical facts"). This is particularly so in a class action, where Plaintiffs naturally know the specific facts related to their own experience, but they have also plausibly alleged that Defendants had a citywide policy that affected thousands of other similarly situated gay male employees and their spouses who were denied IVF benefits that they needed to grow their families. *See Heggs v. City of New York*, 2019 WL 13294646 (E.D.N.Y. Mar. 11, 2019) (explaining the City cannot "ignore[] the definition of the class proposed by plaintiffs").

Finally, Plaintiffs' counsel note that this particular dispute reflects a troubling trend in this case that has persisted in the parties' discovery negotiations where the City refuses to do any investigation at all as to whether indisputably relevant categories of documents exist unless its counsel has seen evidence from Plaintiffs that such documents exist. (The same has not been true of the third parties who have responded to Plaintiffs' subpoenas[1]). Plaintiffs have every intention of being reasonable in their requests for discovery and would be willing to narrow their requests in various ways if Defendants were willing to conduct an initial inquiry into what responsive information exists and how it could be obtained. Instead, Defendants have repeatedly refused to conduct any front-end inquiry into whether responsive documents exist, forcing Plaintiffs to bring these disputes to the Court to merely ask Defendants to perform the threshold investigation that the rules impose on parties and their counsel. If Defendants' counsel were willing to make these initial internal inquiries and be more forthcoming with what information may exist and what does not, it would likely simplify or narrow many of the disputes pending before the Court. Plaintiffs' counsel make this point in the hope that in the future the parties' counsel can collaborate better to litigate this case more efficiently and conserve both private and judicial resources.

Respectfully submitted,

/s/ Peter Romer-Friedman      /s/ David Berman

*Counsel to Plaintiffs Corey Briskin and Nicholas Maggipinto*

---

[1] Plaintiffs have had significant success in their negotiations with various third-party insurers and fertility providers that have been willing to search their internal systems and tell Plaintiffs what is practical to produce and what does not exist or does not comport with how they store information. As a result, counsel for Plaintiffs and the third parties have been able to strike compromises on what those third parties would produce without any need for court intervention and those third parties have made a number of rolling productions.