**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

COREY BRISKIN and NICHOLAS
MAGGIPINTO, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

                v.

CITY OF NEW YORK, ERIC L. ADAMS,
*individually and in his official capacity as the Mayor of
the City of New York*, RENEE CAMPION,
*individually and in her official capacity as the
Commissioner of the Office of Labor Relations of the
City of New York*, BILL DE BLASIO, and
ROBERT LINN,

                Defendants.

Case No. 24-cv-03557-JAV

**<u>MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR SANCTIONS</u>**

i

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................... 1

**FACTUAL BACKGROUND** .................................................................................. 2

    A.  Background on Case Challenging Denial of IVF to Gay City Employees ..........................2

    B.  Defendants Have Improperly Delayed and Stalled the Case at Every Stage......................3

    C.  Defendants Violated the Court's October 27, 2025 Order..................................................5

    D.  Defendants' Violations of this Court's Orders Continued, Including by Failing to Make a Rolling Production and Failing to Provide Basic Information to Plaintiffs About the Review Process in a Timely Manner ...................................................................................................11

    E.  There Has Been No Obstacle to Defendants Complying with the Orders ........................15

    F.  Defendants' Violations of the Court's Orders Were Made in Bad Faith ..........................16

**ARGUMENT** .........................................................................................................16

    A.  Defendants Plainly Violated the October 27 and February 2 Orders..............................17

    B.  Defendants Should Be Sanctioned ...................................................................................18

        1.  Defendants' Actions Were Willful ...........................................................................18

        2.  The Duration of Non-Compliance Favors Sanctions...............................................19

        3.  Defendants Knew the Consequences of Their Actions ...........................................20

    C.  Discovery Sanctions Should be Awarded .........................................................................21

        1.  Defendants Should be Precluded From Using Any Documents Produced After January 31.................................................................................................................21

        2.  Defendants Should be Compelled to Answer Interrogatories ..............................23

        3.  Lesser Sanctions Would Not Be Sufficient ..........................................................24

        4.  Plaintiffs Should Also Receive Monetary Sanctions ............................................25

**CONCLUSION** ..........................................................................................................25

**TABLE OF AUTHORITIES**

Page(s)

*Cases*

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009)............................................................................ 18

*Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*,
  2026 WL 221295 (S.D.N.Y. Jan. 28, 2026)................................................... 24

*Chen v. New Trend Apparel, Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014)................................................................ 23

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991).......................................................................... 21

*Doe v. Delta Airlines, Inc.*,
  2015 WL 798031 (S.D.N.Y Feb. 24, 2015) .............................................. 19, 25

*Downey v. Adloox Inc.*,
  2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) .................................................... 22

*Ferdman v. CBS Interactive Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018)............................................................ 22

*Icon Int'l, Inc. v. Elevation Health LLC*,
  347 F.R.D. 274 (S.D.N.Y. 2024) ............................................................. Passim

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  2019 WL 4727537 ...................................................................................... 24,25

*Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*,
  88 F. Supp. 3d 250 (S.D.N.Y. 2015).............................................................. 20

*Martinez v. City of New York*,
  2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) ................................................. 19

*Reilly v. Natwest Markets Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999)............................................................................ 19

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)............................................................................ 24

*Silva v. Cofresi*,
  2014 WL 3809095 (S.D.N.Y. Aug. 1, 2014) ................................................ 25

*Suarez v. Liquid Blue, Inc.*,
2024 WL 2058166 (S.D.N.Y. May 7, 2024)........................................................................ 25

*United States v. Veeraswamy*,
350 F.R.D. 184 (E.D.N.Y. 2025)....................................................................................... 21

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
694 F.3d 155 (2d Cir. 2012).............................................................................................. 16

## Rules

Fed. R. Civ. P. 37....................................................................................................... Passim

Fed. R. Civ. P. 16........................................................................................................... 17

Plaintiffs respectfully submit this Memorandum of Law in Support of their motion for sanctions due to Defendants' repeated and blatant violations of this Court's orders.

## PRELIMINARY STATEMENT

Defendants should be sanctioned for their repeated refusal to comply with this Court's orders and the basic rules that govern discovery. At every stage of this case, Defendants and their counsel have sought to unreasonably delay this putative class action and have failed to operate in good faith, both in their interactions with Plaintiffs *and* this Court. Due to that misconduct, Defendants have effectively unilaterally stayed this case for nearly two years, depriving thousands of gay men of the ability to vindicate their civil rights in response to the City of New York's (City) denial of in-vitro fertilization coverage to gay male employees and their spouses. Sanctions are necessary to punish Defendants for their misconduct, to remedy the prejudice they caused, *and* to deter the City and its lawyers from engaging in similar tactics in the future, in this case and others.

Defendants' violations of this Court's orders are clear, and this Court has already found that Defendants failed to comply with them. Plaintiffs served their First Requests for Production in October 2024. When Defendants responded in December 2024, they stated that they would produce ESI within *30 days*. When Defendants still had not produced *any* ESI by October 2025— *one year later*—the Court ordered Defendants to begin a rolling production and set a deadline of January 31, 2026, for Defendants to complete their production.

But Defendants not only failed to meet this Court-ordered deadline to complete their ESI production by the end of January, they also failed to produce *a single document* of ESI by that deadline. Shockingly, Defendants offered no explanation for this flagrant noncompliance other than that the documents—which had been requested over 15 months earlier—were voluminous. Defendants recently revealed they were not even close to finishing their review by the end of

1

January, and that they had only reviewed approximately 12,000 of 75,000-plus total documents by February 2, 2026.

On February 2, the Court found that Defendants had violated the Court's prior orders. But Defendants' violations have only continued since then. When Defendants could not meet the Court's end-of-January deadline, they represented that documents from two of three relevant agencies were ready to be produced and would be provided "well in advance of the end of February 2026." The Court then gave Defendants until March 31 to complete their production, but reaffirmed that the production must be made on a rolling basis. Yet Defendants did not produce a single document *until March 6, 2026*, and that production occurred only after Plaintiffs notified the Court that Defendants were continuing to fail to comply with the Court's discovery orders. Even then, Defendants produced only 49 documents from the District Attorney of New York's (DANY) office, even after Defendants told the Court on February 2 they had already processed and were ready to produce "hundreds" of DANY documents and "over 1,000" Mayor's office documents.

To date, Plaintiffs have received only a tiny fraction of the responsive ESI they requested in October 2024. And Defendants' failure to complete their production *after nearly 18 months* has prevented Plaintiffs from moving forward with discovery. Defendants should be sanctioned for this flagrant disregard of the Court's orders that has brought this putative class action to a stand-still.

## FACTUAL BACKGROUND

### A. Background on Case Challenging Denial of IVF to Gay City Employees

On May 9, 2024, Plaintiffs Corey Briskin and Nicholas Maggipinto (Plaintiffs) filed this putative class action to challenge the City of New York's policy of categorically denying in-vitro fertilization (IVF) benefits to gay male employees and their spouses in violation of federal, state, and local laws and the federal and state constitutions. ECF No. 5 (Compl). The City Law Department has represented Defendants in this dispute for *years* before this action was filed. In

2

2021, Plaintiffs alerted the City's Office of Labor Relations (OLR) that the City was denying gay male employees and their spouses IVF benefits. Compl. ¶ 69. That same year, Plaintiffs contacted the Law Department to make the same complaint. *Id.* ¶ 70. The City, represented by the Law Department, acknowledged that the City had this policy, but declined to change it. *Id.* ¶ 71.

On April 22, 2022, Plaintiffs filed a systemic discrimination charge with the Equal Employment Opportunity Commission (EEOC). Compl. ¶ 73. Before the EEOC, the City was represented by Lawrence Profeta, the Deputy Chief for the Labor and Employment Division of the Law Department. Ex. A[1] to Declaration of Peter Romer-Friedman (PRF Decl.). In its position statement, the City again did not deny that its healthcare plan categorically denied gay male employees and their spouses IVF benefits. Compl. ¶ 74; Ex. A. On May 10, 2024, the day after Plaintiffs filed the Complaint in this action, Plaintiffs served the Complaint on Mr. Profeta, who waived service on behalf of all Defendants on May 30, 2024. ECF No. 6.

### B. Defendants Have Improperly Delayed and Stalled the Case at Every Stage

Despite having been on notice of the systemic practice and legal claims in this action for three years before Plaintiffs filed suit in 2024, Defendants have repeatedly sought extensions of nearly every court-ordered deadline in this litigation. More troublingly, Defendants have waited until the last possible minute to seek these extensions, have refused to provide justifications for such extensions, have failed to meet and confer in good faith with Plaintiffs about requested extensions, and have filed misleading papers with this Court as to why those extensions were needed.

Because Defendants waived service, their deadline to respond was July 9, 2024. *Id.* On July 5, a new lawyer on the case, Shemori S. Corinthian, filed a motion seeking a 90-day extension of Defendants' time to answer—from July 9 to October 7, 2024. ECF No. 8. Defendants' only

---

[1] All Exhibits are attached to the Declaration of Peter Romer-Friedman, counsel to Plaintiffs.

justification for seeking more than 150 days to respond to the Complaint about a dispute that they had known about for three years was that "[t]he requested extension of time is necessary to allow [Ms. Corinthian] to investigate the facts of the case, confer with the City's Office of Labor Relations, and to formulate an appropriate response to the Complaint." *Id.* Defendants offered no explanation as to why this investigation had not been done by the deadline that their own counsel had agreed to, ECF No. 6, or why a more modest extension would not suffice. *Id.*

In opposition, Plaintiffs noted "the bad faith way that Defendants sought this extension," including by "refusing to confer until the last business day an extension request could be made," "refusing to compromise on anything short of a 90-day extension," and "attempting to mislead the Court into thinking that Plaintiffs refused to agree to *any* extension". ECF No. 9 at 1. Although the Court did not grant the last-minute extension request by July 9, 2024, Defendants failed to file any response to the Complaint by the then-operative deadline. As Plaintiffs noted then, Defendants could have easily avoided missing that deadline by seeking an extension more than four days before the deadline or by negotiating with Plaintiffs. PRF Decl. ¶ 14. On July 12, 2024, the Court granted in part and denied in part the request, giving Defendants 66 more days to respond. ECF No. 11.

Defendants' handling of their very first deadline was a sign of things to come, and what has followed is a 22-month campaign to stymy and stall a civil rights class action that seeks justice for thousands of City employees and their spouses. Specifically, Defendants and their counsel have:

(1) failed to produce any Electronically Stored Information (ESI) that was responsive to Plaintiffs' *First* Set of Document Requests from October 2024 through March 2026 in violation of both the Court's October 27, 2025 order to complete all ESI discovery by January 31, 2026, and the Court's February 2, 2026 order to begin a rolling production of ESI;

(2) repeatedly refused to provide Plaintiffs with necessary information during meet-and confers, leading the parties to bring unnecessary disputes to the Court;

(3) misrepresented the positions of Plaintiffs' counsel to the Court; and

(4) attempted to mislead the Court into believing that Defendants' failure to produce *any* ESI by the end of January 2026 was due to the lack of a Rule 502(d) clawback agreement, although they first proposed the clawback agreement to Plaintiffs just *one hour* before they filed a motion for a two-month extension.

Because Plaintiffs only seek sanctions for Defendants' violations of this Court's October 27, 2025 order and its February 2, 2026 order, they will not detail all the facts underlying the improper conduct summarized in the prior paragraph. But the Court has seen these tactics by Defendants first-hand and has repeatedly expressed frustration with their conduct.

For example, at the October 27 status conference—to which Defendants' only lawyer arrived 45 minutes late—the Court observed that Defendants' counsel had raised a dispute *for the first time* before the Court about Plaintiffs' "attorneys' eyes only" designation of medical records. Oct. 27, 2025 Tr., Ex. B at 17-22. As the Court explained to Defendants, Plaintiffs are "not mind readers" and "[i]it's not on them to figure out that you have an objection that you have not raised with them and then wait till you get to the courtroom to bring it up for the first time. That's not how meet and confers work. That's not how the protective order works. . . . [You] [c]an't just keep it in your mind that you have a dispute and not tell anybody about it." *Id.* at 22:08-22:20.

Likewise, at a December 16, 2025 hearing, in response to Defendants repeatedly providing information in Court that they had withheld from Plaintiffs at meet-and-confers, the Court stated:

> Ms. Corinthian, I do exhort you to approach the meet-and-confers with perhaps more information than you have in the past. A lot of these issues can be dealt with very practically. If the documents don't exist, make the inquiry. You could have saved letter practice and coming to court and involving the Court by just making the inquiry and letting him know the documents don't exist. That is a so much more practical way of dealing with that than to stonewall and say these are unlikely to exist, probably privileged. Just make the inquiry.

Dec. 16 Tr., Ex. C at 21:07-21:16. These are just two examples of Defendants' obstructive conduct.

### C. Defendants Violated the Court's October 27, 2025 Order

As the Court observed at the February 2 conference, Defendants failed to comply with its

October 27, 2025 order to complete production of all ESI by the end of January 2026 and make rolling productions before then. Feb. 2, 2026 Tr., Ex. D at 17:05-17:10; 26:04-26:08, 27:20-27:23.

On October 1, 2024, Plaintiffs served their First Set of Requests for Production (Ex. E), and their First Set of Interrogatories (Ex. F). Plaintiffs later consented to extend Defendants' responses to these discovery requests until December 23, 2024, PRF Decl. ¶ 18, and Defendants served responses on that date. *Id.* & Exs. G & H. In response to any request for internal communications or documents other than insurance plans, Defendants stated "they are conducting a search for documents that may be responsive to this request and anticipate producing any responsive documents, subject to the foregoing objections, within 30 days". Ex. G at 7-10.

On February 5, 2025, Plaintiffs sought to meet and confer about Defendants' failure to produce the documents that they had stated would be produced within 30 days of December 23, 2024. PRF Decl. ¶ 20. They also sought to meet and confer over Defendants' refusal to answer interrogatories based on the objection that the information could be obtained through a document or depositions, but without producing any documents responsive to those requests. *Id.* ¶ 21. In the meet and confer that followed, Defendants disclosed that they had not searched for *any* responsive ESI and that Defendants needed *Plaintiffs* to propose search terms before they would begin to search for any ESI. *Id.* ¶ 22. Regarding the interrogatories, Defendants stated they were not aware of any specific responsive documents, but still would not answer Plaintiffs' interrogatories since the information would be available through ESI discovery (for which they had not begun to search) or a later 30(b)(6) deposition (that would not occur until after the ESI production). *Id.* ¶ 23.

Plaintiffs later proposed search terms and the types of custodians at various City agencies whose ESI should be searched. The parties then negotiated over those proposed terms and the appropriate agencies and custodians to be searched. *Id.* ¶ 24. By June 2025, the parties agreed to search terms that Defendants would apply to search OLR, DANY, and the Mayor's Office. *Id.*

They also agreed on custodians to be searched at OLR and the Mayor's Office, and in August 2025 they reviewed "hit reports" on how many documents the search terms hit for each custodian at those agencies.[2] *Id.* ¶¶ 24-25.

At the October 27, 2025, status conference, Defendants represented to the Court that as of that day they had "collected" the documents and had "started" the e-discovery process, but did not provide a specific date of when that occurred. Ex. B at 13:09-13:23. The Court expressed concern that Defendants had not produced *any* ESI in response to discovery requests that had been served approximately 13 months earlier. *Id.* at 11:15-12:05. As the Court explained, "this is a yearlong now, and so I'm very concerned." *Id.* at 14:12-14:13.

The Court then asked Defendants' counsel "So what is your time frame for producing the [ESI] documents? Because we have to—we need some dates to put on the calendar to make sure that nothing slides, and it has to be well in advance of July 16 so that we have opportunities to do all the work that needs to be done" before the close of discovery. *Id.* at 15:04-15:08. Defendants' counsel responded, "I just don't have a specific date to give now, your Honor, but I do expect to start at least some materials getting out in November." *Id.* at 15:10-15:12. The Court then directed that the City should "complete its productions by January [2026]." *Id.* at 15:13-15:17.

The Court further suggested that Defendants consider foregoing a relevance review if such a review was going to delay Defendants' productions. As the Court explained "I'm certainly not going to stop you [from doing a relevance review], but if you're telling me you have resource issues and there's difficulty getting the bulk of documents reviewed in a timely way, then you have to decide how you want to allocate your resources and time. But I'm just telling you what the time frame is going to be for getting these documents out the door." *Id.* at 16:25-17:05.

---

[2] While Defendants represented they would provide a list of custodians and a similar "hit report" for the DANY's office, this information was never provided to Plaintiffs. PRF Decl. ¶ 26.

7

The parties clearly understood the Court's October 27, 2025 oral order that Defendants complete their ESI production by the end of January 2026. In fact, that is how Defendants described the Court's October 27 order in seeking relief from it. ECF No. 48 ("At an October 27, 2025 status conference, the Court directed Defendants to complete ESI production by January 2026. Defendants respectfully request an extension of that deadline to March 31, 2026.").

In early December 2025, Plaintiffs brought an additional dispute to the Court's attention. ECF No. 38. When raising that dispute, Plaintiffs noted their concern that, despite Defendants' representation that a rolling production would begin in November 2025, Defendants still had not produced *any* ESI. *Id.* at 2. Defendants responded: "Defendants have assigned additional attorney reviewers to complete the review and anticipate making a substantial production from all agencies by the January 2026 deadline imposed by the Court." ECF No. 42 at 2 (Dec. 9, 2026).

On January 27, 2026, Defendants asked for Plaintiffs' consent for a 60-day extension of time to complete ESI discovery. Ex. I. Despite having not produced a single ESI document, Defendants gave no indication as to when they would begin making a production, how many documents remained to be reviewed, or why Defendants waited until *four days* before their entire production was due to seek an extension. When Plaintiffs would not consent, Defendants emailed Plaintiffs on January 29 at 4:38 p.m., proposing a Rule 502(d) clawback agreement and stating that "The DANY and MO review is complete and now just needs to undergo formatting, based on your prior request for native production and for redactions. I anticipate these documents will be available soon, just working on getting feedback from the eDiscovery department." Ex. J.

Just two hours later, at 6:54 p.m., Defendants moved the Court for an extension of time to complete their production, and, incredibly, (falsely) implied that their delay in complying with the January 31 deadline was due in part to Plaintiffs not having agreed to the 502(d) agreement. ECF No. 48. But Defendants failed to tell the Court that they had only proposed the 502(d) agreement

to Plaintiffs for the first time *two hours earlier*. When requesting this extension, Defendants also told the Court that their review of documents from DANY and the Mayor's office was complete and that the extension was only necessary to complete their review of the OLR files. *Id.* Thus, Defendants represented that they would "be able to produce the DANY and Mayor's Office documents well in advance of the end of February 2026." *Id.* Although Defendants' extension request was still pending, they did not produce a single document by the Court's January 31, 2026 deadline for Defendants to *complete* their entire production of ESI. PRF Decl. ¶ 27.

On January 30, just 24 hours after receiving the proposed clawback agreement from Defendants, Plaintiffs provided Defendants with proposed revisions in redlines and offered to meet and confer. *Id.* ¶ 28. Defendants did not respond or agree to meet and confer before the February 2 status conference. *Id.* ¶ 30. In the same e-mail on January 30, 2026, Plaintiffs also asked Defendants to inform Plaintiffs of "the volume of documents that will be produced as a part of the forthcoming production for the Mayor's Office and the DA's office, and when they will be produced." Defendants did not respond to that request either. *Id.* ¶¶ 29-30.

At the February 2, 2026 status conference, Defendants could not answer the Court's basic questions about the progress of Defendants' ESI production, such as what percentage of responsive documents came from DANY or the Mayor's office (for which documents were supposedly ready to be produced) as opposed to documents from OLR (for which no documents were ready to be produced). Ex. D at 3-4. But Defendants acknowledged that "the bulk of the documents are from OLR, and that's why that review is still undertaken now." *Id.* at 3:13-3:16. As the Court explained, it was "baffled" that Defendants were "coming in here and asking for an extension of time based on the due diligence that you have exercised so far but literally can't give me a number as to what has been processed and not processed. That's just not acceptable." *Id.* at 04:09-04:15.

9

Only *after* the Court expressed frustration, Defendants volunteered that the City was prepared to produce "[s]everal hundred documents" from DANY and "over 1,000 documents" from the Mayor's office—a tiny fraction of the City's overall production. *Id.* at 04:15-05:25. In other words, until the Court made clear that Defendants' failure to provide this critical information was unacceptable, Defendants' counsel appeared prepared to mislead the Court into believing that she did not know how many documents the City was able to produce for those two agencies.

The Court was "very, very troubled by how this has been proceeding," as the Court "thought [it] was very clear at the last conference that documents were supposed to be produced in January, and that they were supposed to be produced on a rolling basis, and here we are, no productions have been made-- no productions -- and the bulk of it hasn't been processed." *Id.* at 17:05-17:10. Thus, the Court "encourage[d] plaintiff[s] to consider whether [sanctions] would be appropriate for violations of [the Court's] order and what sanctions may be appropriate in this case." *Id.* at 17:11-17:14; *see also id.* at 21:17-21:19 ("I will entertain sanctions motions if plaintiffs are inclined to bring, but I think, more importantly, we need to right this ship."). It then extended Defendants' time to produce all outstanding ESI until March 31, 2026 and made clear its order remained that production should be made on a rolling basis. *Id.* at 26:19-28:04. As the Court stated, "I had already ordered the rolling production at the last and I will continue to order. Since that was not abided by, I am now reordering the rolling productions. So, hopefully the DANY and the office of the mayor documents shall be coming shortly, since the representation is that they are already privileged reviewed and just need to be redacted and produced." *Id.* at 27:20-28:01.

Finally, Defendants' counsel noted she would not be working around the March 31 deadline, but she would communicate the Court's orders to "everyone involved in the case," *id.* at 25:17-25:19, and she was "meeting with [her] supervisors later this week to figure [] out" transitioning the case to others. *Id.* at 25:25-26:03. The Court then directed Ms. Corinthian to

10

"make sure [new counsel is] very aware of my displeasure at the rate of the e-discovery production, the fact that the City was not in compliance with my prior order, and that this extension is not going to be -- this deadline is not going to be extended a second time." *Id.* at 26:04-08.

During the February 2 hearing, Plaintiffs also learned for the first time that Defendants had been using TAR to conduct the ESI review. Defendants conceded that they "did not have any conversations with" Plaintiffs about using TAR. *Id.* at 18:06-18:10. The Court once again called Defendants' conduct "very concerning," *Id.* at 19:08, and stated that it was "so appalling to me that there's been so little communication between the parties as to how this is going to proceed, what the protocols are in place, that the plaintiffs have not had a say in what those protocols are, that the City is just proceeding however it wants to proceed without informing the plaintiffs as to how this review is being conducted." *Id.* at 20:16-20:23. The Court ordered the parties to meet and confer over Defendants' review protocol so that Plaintiffs would "have a better understanding of what precisely is happening with respect to the processing of e-discovery." *Id.* at 24:16-25:05.

### D. Defendants' Violations of this Court's Orders Continued, Including by Failing to Make a Rolling Production and Failing to Provide Basic Information to Plaintiffs About the Review Process in a Timely Manner

In a clear violation of the Court's February 2 order that Defendants make rolling productions during the additional two months the Court gave them to produce all ESI, Ex. D at 27:16-28:04, Defendants did not make any production until March 6, 2026. Despite representing to the Court that several "hundred documents" from DANY and over "1,000 documents" from the Mayor's office were *already* "processed" and were "ready for production," *id.* at 03:17-05:06, Defendants made only a single production of only 49 documents spanning 133 pages, and only after Plaintiffs filed a letter motion with the Court over the lack of any rolling production. ECF No. 56; PRF Decl. ¶ 50. Defendants have offered no explanation as to why Defendants only produced

11

49 documents rather than the "hundreds" of DANY documents that Ms. Corinthian told the Court had been processed and were ready for production. *Id.* ¶ 51.

On February 2, 2026, immediately after the status conference with the Court, Plaintiffs told Ms. Corinthian that they would meet and confer to discuss Defendants' ESI review process and the proposed clawback agreement as soon as Defendants were available. PRF Decl. ¶ 31. On February 3, the parties agreed to meet and confer on February 4. *Id.* In advance of that meeting, Plaintiffs gave Defendants a list of questions they wanted Defendants to be prepared to answer about their ESI review process, including the error rate of the non-human review, what portion of documents were found to be unresponsive based on non-human review, and what portion of documents that the search terms hit at each agency had been reviewed by the Law Department or were not yet reviewed. *Id.* ¶ 32. At the February 4 meet and confer, Defendants were only able to provide a general description of Relativity's Active Learning tool that they had been using for review. *Id.* ¶ 33. But they refused to answer nearly every question Plaintiffs posed in advance of and during the meeting and they refused to offer any details about the specific review process they were undertaking, such as the accuracy of the process or the number of documents that had been deemed unresponsive by machine-learning. *Id.* The parties also discussed the proposed 502(d) clawback agreement and how the Court had already entered a protective order that created a process for handling disputes over inadvertently produced documents. *Id.* ¶ 34.

The next day, February 5, 2026, Plaintiffs sent proposed edits to Defendants regarding the proposed 502(d) agreement. Ex. K. In addition, Plaintiffs conducted research on Relativity's Active Learning/TAR tool, and three business days later, on February 10, sent nine detailed follow-up questions to Defendants to ascertain the validation and accuracy of their review process, including the total number of documents the search terms identified at each agency, the total number of responsive documents deemed responsive, the elusion sample size, the elusion set (*i.e.*, the number

12

of documents the Active Learning tool deemed unresponsive), the elusion rate, richness, recall, recall rate, precision, the confidence level, and the margin of error selected. Ex. L.

Ms. Corinthian responded three days later, on February 13, stating "I am writing to confirm receipt of this email to let you both know that I'm conferring with the E-discovery unit and will provide an appropriate response shortly." Ex. M. She also sent a separate email stating, without further explanation, "I'd be willing to discuss further. However, we cannot accept the proposed edits with the clawback agreement as they undermine the purpose of the 502(d) agreement and generally work backwards from what is already contemplated in the protective order. Please note that our office is closed on Monday, and we will be back in touch after Monday." Ex. N. But she did not communicate "after Monday" or anytime thereafter. In fact, Defendants did not send Plaintiffs edits to the clawback order until *March 12*. PRF Decl. ¶ 52.

Having heard nothing from Ms. Corinthian for over a week, Plaintiffs followed up on February 24 and received an out-of-office message that she was on leave and to contact her supervisors. *Id.* ¶ 38. Plaintiffs were never told who would take over the case before Ms. Corinthian's departure, despite having asked her to connect them with Defendants' new counsel *before* she took leave. *Id.* ¶ 39. Nevertheless, Plaintiffs immediately contacted the supervisors listed— Daniel Dandridge and Kerrin Bowers—and asked them which attorney would take over the case. Ms. Dandridge directed Plaintiffs to Defendants' current counsel, Zachary Ellis. *Id.* ¶ 40.

Plaintiffs' counsel immediately emailed Mr. Ellis that evening and again the next day, summarizing the outstanding issues and emphasizing the need for the parties to speak urgently to address outstanding questions over the ESI process, finalize the 502(d) agreement, and understand why, despite the order of a rolling production and Defendants' representation to the Court that they would "be able to produce the DANY and Mayor's Office documents well in advance of the end of February 2026," ECF No. 48, no rolling production had yet been made. PRF Decl. ¶ 40.

13

On February 25, after Mr. Ellis appeared in the case, ECF No. 51, Plaintiffs again wrote to him: "We saw that you entered an appearance in the Briskin case. We look forward to working with you. Please let us know a good time that works for you to connect, including to address the issues that [Plaintiffs' counsel] tried to raise with [Ms. Corinthian] earlier this week." PRF Decl. ¶ 41. Mr. Ellis responded the next day, stating: "I apologize for the delay in responding to your below e-mail. I was just assigned to this matter and am still getting caught up to speed. I will follow up with you to schedule a time for a phone call to discuss this matter further with you." Ex. O. An hour later, Plaintiffs' counsel responded, stating "We genuinely hope that you and we can collectively foster a constructive and collaborative working relationship with you on this matter going forward. In addition to the issues raised below and in the other emails we forwarded to you, we will also want to confer next week over Plaintiffs' forthcoming sanctions motion against the City of New York." Ex. P. And Plaintiffs' counsel described how the Law Department had *still* not provided Plaintiffs' counsel with any meaningful information about Defendants' Relativity Active Learning/TAR process. *Id.* Having not heard back from Defendants on February 27, Plaintiffs wrote to Defendants again to inquire why they had still not produced any ESI documents despite the Court's order that Defendants produce documents on a rolling basis. Ex. Q.

In short, for more than a month after the Court's February 2, 2026 orders, Defendants continued to disregard this Court's orders and effectively stay the litigation by failing to produce *any* ESI at all (on a rolling production or otherwise), and by failing to confer in good faith or inform Plaintiffs about Defendants' ESI review process. It also appears that Ms. Corinthian did not properly transition the case to ensure that the case could proceed uninterrupted and that Defendants would begin to comply with the Court's orders. Only after Plaintiffs submitted a letter motion to the Court on March 4, ECF No. 56, did Defendants respond and offer to meet and confer. PRF Decl. ¶¶ 45-46.

At a March 6 meet-and-confer, the parties further discussed the clawback agreement and Defendants gave some additional information on the TAR process. *Id.* ¶ 47. Plaintiffs requested that Defendants provide in writing their proposed edits on the clawback agreement and any answers about the TAR process. *Id.* Plaintiffs also stated that they were willing to make the clawback order retroactive and they would not use any documents produced before the order is finalized, so that Defendants could begin any production *before* that order was entered. *Id.* ¶ 48. When Plaintiffs inquired how many documents had been reviewed by February 2, among other dates, Defendants refused to answer and said it would be hard to determine that number. *Id.* ¶ 49. Later that night, Defendants produced 49 documents spanning 133 pages from DANY. *Id.* ¶ 50.

When Defendants responded to Plaintiffs' motion on March 9, ECF No. 57, they again portrayed the clawback order as the obstacle to producing Mayor's office documents, but *Defendants* still had not responded to clawback edits Plaintiffs sent on February 5, and Plaintiffs had offered to make the clawback order retroactive and not use any produced documents in the meantime. *Id.* at 2; PRF Decl. ¶ 48. Defendants also told the Court they had reviewed 12,000 of the 75,000-plus total documents by February 2, ECF No. 57 at 2, continuing their pattern of withholding information that Plaintiffs requested during meet-and-confers, only to then share it in Court filings.

**E. There Has Been No Obstacle to Defendants Complying with the Orders**

Both before and after the February 2 conference, there has been no obstacle to Defendants complying with the Court's orders to produce documents on a rolling basis. Nor have Defendants asked Plaintiffs to consent to extend or modify the Court's outstanding orders.

The lack of an executed clawback agreement did not justify failing to make a rolling production. *First*, Plaintiffs represented to this Court and Defendants that "if [the City] produces any documents to us, we have no intention of using them or making them public until we can reach an agreement on the clawback," Ex. D at 16:07-16:09, and agreed to apply any clawback order

15

retroactively. PRF Decl. ¶ 48. Second, the Court had already entered a protective order that allows inadvertently produced documents to be clawed back. Protective Order ¶¶ 19-23, ECF No. 25. Third, *Defendants' counsel* are fully responsible for any delay in executing a clawback agreement, as they failed to propose an agreement until *two hours* before they moved for an extension of the ESI completion deadline on January 29, 2026, repeatedly refused to confer over the agreement, and failed to offer any substantive response to Plaintiffs' edits from February 5 until March 12.

### F. Defendants' Violations of the Court's Orders Were Made in Bad Faith

Based on the foregoing events, Plaintiffs believe Defendants' repeated violations of this Court's orders were made in bad faith. Their counsel were aware of the deadlines and other orders, but repeatedly refused to comply with them, including by failing to complete ESI production by the established deadlines, failing to make any rolling productions, failing to seek extensions for deadlines or seeking an untimely extension to prevent a ruling before the deadline passed, and failing to confer in good faith over requested extensions and the ESI review process. What's more, Defendants repeatedly refused to answer basic questions on their conduct, like the names of the lawyer(s) who supervised Ms. Corinthian and participated in ESI review and their awareness of the orders, the number and portion of documents reviewed at various times, and what prevented them from producing any ESI before the January 2026 deadline or later. PRF Decl. ¶ 53.

### ARGUMENT

The Court should award sanctions for Defendants' flagrant violations of the Court's October 27, 2025 order to complete their ESI production by January 31, 2026, and the Court's February 2, 2026 order to make a rolling production of ESI. Rule 37 of the Federal Rules of Civil Procedure "governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district

16

court has wide discretion in sanctioning a party for discovery abuses." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). Rule 37 imposes a wide range of non-monetary sanctions, as well as mandatory monetary sanctions for violations of the Court's discovery orders.[3]

Defendants plainly violated the Court's orders and Plaintiffs thus seek both non-monetary and monetary sanctions. First, Plaintiffs request that Defendants be precluded from making affirmative use of any documents they have refused to produce for the past 17 months. Second, Plaintiffs request that Defendants respond to the interrogatories that Defendants have refused to answer on the basis that documents or a 30(b)(6) deposition would be a better alternative to answering them, because Defendants' misconduct has prevented that alternative discovery from occurring. Finally, Plaintiffs request reimbursement of attorneys' fees and costs.

### A.  Defendants Plainly Violated the October 27 and February 2 Orders

Defendants plainly violated two Court orders. First, they violated the October 27, 2025, order when they failed to produce *any* ESI by the court-ordered deadline of January 31, 2026 *to complete* their ESI production. Second, Defendants violated the February 2, 2026 order when they failed to begin their rolling production until one month later on March 6, 2026, despite the Court's order to begin that production as soon as possible and Defendants' prior representation that they could produce documents from DANY and the Mayor's office "well in advance of the end of February 2026." ECF No. 48. Defendants did not make *any* production until after Plaintiffs moved the Court on March 4, 2026 seeking additional relief, ECF No. 56, and even then, they still only

---

[3] Defendants' disregard of the Court's orders can be characterized as a violation of Rule 37(b)(2)(A) for "fail[ing] to obey an order to provide or permit discovery" or a violation of Rule 16(f)(1)(C) for "fail[ing] to obey a scheduling or other pretrial order." The legal analysis is the same regardless of whether Defendants' failure to produce any ESI by the Court's deadline is a violation of Rule 37, Rule 16, or both. *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024) ("It is well settled that in this court, the standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37.") (cleaned up).

made a production from DANY of just 49 documents (not hundreds), and still have not made *any* production from the Mayor's office. *Third*, as described above, Defendants failed to give Plaintiffs information on their TAR review process, as the Court ordered on February 2. It also appears likely that they violated the order to properly transition this case before Ms. Corinthian's departure.

## B. Defendants Should Be Sanctioned

Plaintiffs seek sanctions for Defendants' failure to comply with the Court's orders. "Rule 37(b)(2)(A) authorizes a range of sanctions, including dismissal or default judgment, striking of pleadings, preclusion and mandatory adverse inference instructions." *Icon*, 347 F.R.D. at 285. "In *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298 (2d Cir. 2009), the Second Circuit directed courts to analyze four non-exhaustive factors when considering whether to impose sanctions under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Id.* These factors "are not exclusive" and "need not each be resolved against a party to warrant sanctions." *Id.* (cleaned up). Plaintiffs first address the factors relevant to whether sanctions should be issued (factors 1, 3, and 4) and then the appropriate sanction and why lesser sanctions are not warranted (factor 2).[4]

### 1. Defendants' Actions Were Willful

First, Defendants' acts were willful. "Non-compliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due

---

[4] Plaintiffs believe that Defendants should be sanctioned, but they take no position on whether Ms. Corinthian, or other lawyers within the Law Department who were aware of the Court's orders, should be sanctioned individually. Plaintiffs have no reason to believe Defendants were not informed of their counsel's actions, particularly since Ms. Corinthian is an employee of the City of New York. Plaintiffs believe it is fair to assume that Ms. Corinthian and anyone working alongside her acted with the direct knowledge and acquiescence of their employer, but take no position to the extent the Court seeks to inquire further as to whether counsel should be personally sanctioned.

to factors beyond the party's control." *Martinez v. City of New York*, 2018 WL 604019, at *23 (E.D.N.Y. Jan. 24, 2018). "Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to produce documents in violation of the district court's orders." *Doe v. Delta Airlines, Inc.*, 2015 WL 798031, at *8 (S.D.N.Y Feb. 24, 2015) (cleaned up). Here, the Court's order was clear, Defendants' own correspondence demonstrates that they understood the order, ECF No. 48, and there are no factors beyond Defendants' control that prevented compliance.

Defendants were aware of the discovery requests since October 2024 and represented in December 2025 that they would complete their production by the end of January 2026. ECF No. 42 at 2. Defendants knew they received a Court order on October 27, 2025, Ex. B, but simply failed to follow it or even seek relief from it until just two days before the deadline. When the Court issued a new deadline and ordered a rolling production, Defendants continued to ignore the Court's orders until Plaintiffs sought relief from the Court over a month later, and they still have only produced 49 documents from just one of the three agencies. When Defendants failed to meet the January 31 deadline, they offered no reason at all—let alone a compelling one—for noncompliance, beyond that the documents were voluminous, which they had known for months.

Plaintiffs have repeatedly raised their concerns over Defendants' failure to produce documents and more generally the lack of staffing and resources Defendants have committed to this case, including assigning a single lawyer. ECF No. 40. Defendants ignored those warnings. Instead, they repeatedly misrepresented to Plaintiffs and the Court that they would comply with deadlines, only to seek last minute extensions without explanation other than that they need more time to complete time-consuming tasks (for which they did not allocate appropriate resources).

### 2.   The Duration of Non-Compliance Favors Sanctions

The duration of non-compliance also favors sanctions. Courts have found non-compliance for as short as four months warrants the "harshest of sanctions, including dismissal or default." *Icon,*

19

347 F.R.D. at 289; *see also Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265 (S.D.N.Y. 2015) ("durations of time as brief as a few months have been held to weigh in favor of dispositive sanctions."). Here, Defendants failed to produce documents responsive to requests served in *October 2024*, and have violated the Court's orders since the end of November when they failed to produce any documents on a rolling basis, as they had represented they would, Ex. B at 15:10-15:12, and then failed to produce *any* ESI by the January 31, 2026 deadline to complete their production. Their non-compliance continues to this day. Defendants still have only produced 49 documents from one agency, despite representing that *all* responsive, non-privileged documents from two agencies would be produced well before the end of February. ECF No. 48. Defendants' prolonged refusal to comply with the Court's clear orders—which has effectively unilaterally stayed the case for many months—favors the issuance of sanctions.

### 3. Defendants Knew the Consequences of Their Actions

While the Court never explicitly stated prior to February 2 that Defendants would be sanctioned for failing to comply, Defendants should have known that would be the consequence. The Court expressed many times that it was "very concerned" with the pace of discovery, Ex. B at 14:12-14:13, and that "we need some dates to put on the calendar to make sure that nothing slides . . . so that we have opportunities to do all the work that needs to be done" before the close of discovery. *Id.* at 15:04-15:08. The Court warned Defendants that "you have to decide how you want to allocate your resources and time. But I'm just telling you what the time frame is going to be for getting these documents out the door." *Id.* at 17:03-17:05.

The Court could not have been clearer that it was very concerned about the glacial pace of e-discovery and that Defendants would have to meet the January 31 deadline, even if it meant foregoing a relevance review. Defendants thus cannot feign surprise that they would face sanctions for failing to produce *a single document* by that deadline for completing their production. In any

20

event, the Court directly stated at the February 2 conference that Plaintiffs were "encourage[d] . . . to consider whether [sanctions] would be appropriate for violations of [the Court's] order and what sanctions may be appropriate in this case." Ex. D at 17:11-17:14. Despite being on direct notice of their sanctionable conduct, Defendants continued to ignore the Court's orders when they failed to make any rolling production for a month after the February 2 conference and still have not produced *most* of the documents they said would be produced well before the end of February.

## C. Discovery Sanctions Should be Awarded

Plaintiffs request two discovery sanctions. First, Plaintiffs request that Defendants be precluded from using documents produced after January 31, 2026 in furtherance of any defense. Second, the Court should order Defendants to respond to Interrogatories 1, 2, 3, 12 and 13 of Plaintiffs' First Set of Interrogatories that were initially served on October 1, 2024. Ex. F.

### 1. Defendants Should be Precluded From Using Any Documents Produced After January 31

Defendants should be precluded from using documents they withheld for over 17 months in furtherance of any defense. Preclusion is one of Rule 37's enumerated remedies, and courts often apply it in circumstances just like this where a party repeatedly refuses to comply with its discovery obligations. *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) ("although . . . precluding a party from presenting evidence in opposition to it is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators."); *United States v. Veeraswamy*, 350 F.R.D. 184, 207 (E.D.N.Y. 2025) (ruling "appropriate sanction" was "prohibiting Defendant from supporting or opposing designated claims or defenses and from introducing matters in evidence concerning [discovery that was not timely produced]"); *Icon*, 347 F.R.D. at 298 ("Icon

21

will be precluded from relying on evidence that was produced after the discovery deadline"); *Downey v. Adloox Inc.,* 2018 WL 794592, at \*2 (S.D.N.Y. Feb. 8, 2018) (collecting cases).

"In determining whether preclusion of evidence is an appropriate sanction, a court should consider: '(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the excluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance.'" *Icon*, 347 F.R.D. at 296 (quoting *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 527 (S.D.N.Y. 2018)). While "bad faith is not required to merit preclusion under Rule 37," it "can be taken into account as an explanation for a party's failure to comply with discovery orders." *Id.* (cleaned up).

All four factors favor preclusion here. First and most important, Defendants still have not offered any substantive explanation for failing to comply with the Court's deadlines and have repeatedly misled the Court on their progress. ECF No. 42 at 2 (Defendants claiming in mid-December 2025 they were on pace to meet January deadline); ECF No. 48 (Defendants claiming DANY and Mayor's office documents will be produced well before end of February). Defendants also waited until the very last minute to even seek an extension of the January 31 deadline, despite the Court's clear admonitions that it was a firm deadline, and then falsely suggested that *Plaintiffs* caused the delay by not signing a 502(d) order that Defendants first proposed only *two hours* earlier.

This bad faith conduct has continued since the February 2 conference. Defendants (1) again ignored the Court's order to make a rolling production, (2) refused to provide edits to Plaintiffs' February 5 revisions to the 502(d) order for over a month until March 12, (3) did not respond to Plaintiffs' questions about Defendants' TAR review process for over a month, and (4) did not tell Plaintiffs when Ms. Corinthian was going on leave despite her statement that she would be back in touch the next week. This bad faith conduct, without any credible explanation as to why ESI that was *requested* in October 2024 is still *outstanding* in March 2026, warrants preclusion.

22

Second, the withheld documents are critical to the case. Plaintiffs need this ESI to establish how the City's discriminatory policy or practice was developed and modified; when and how Defendants were put on notice of the policy or practice; what steps Defendants took in response to complaints; and why Defendants failed to stop this discrimination for years, among other issues.

Third, Plaintiffs and putative class members have been prejudiced, as they have not been able to meaningfully pursue this civil rights class action for nearly two years or prepare to prosecute their case or respond to Defendants' defenses. Defendants have effectively and unilaterally granted themselves a stay that has prevented Plaintiffs from developing their case to vindicate their rights and the rights of thousands of gay male City employees and their spouses denied equal treatment.

Finally, while a continuance has been granted for Defendants to produce ESI, Defendants "should not be permitted to upset a discovery schedule which was extremely liberal and to which their adversaries adhered." *Icon*, 347 F.R.D. at 297 (cleaned up); *see Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 435 (S.D.N.Y. 2014) (explaining that granting more time with no consequence would "reward the [defendants] for disregarding this court's orders by imposing on the other parties at this late stage the need to invest significant time and expense in the task of assessing and responding to [belated discovery]."). From the first deadline to recent orders to produce ESI, Defendants have missed nearly every chance to comply with the federal rules and this Court's orders. Their window to use documents they refused to produce for 17 months should be closed.

### 2.  Defendants Should be Compelled to Answer Interrogatories

Defendants have refused to respond to Interrogatories 1, 2, 3, 12 and 13 of Plaintiffs' First Set of Interrogatories on the basis that they will require narrative answers and are prohibited by Local Rule 33.3. They repeatedly claimed the information sought could be more easily obtained from documents or later from depositions. ECF No. 29 at 3. The Court denied Plaintiffs' motion to compel in May 2025, largely on the basis that "Defendants have, in fact, identified a 'more

practical means' to provide this information to Plaintiffs: a Rule 30(b)(6) deposition of a City-designated witness". ECF No. 31 at 8. But Plaintiffs could not take that deposition, because Defendants refused to produce the very documents that are needed as exhibits to take depositions.

Courts often order the sanction that the offending party must waive all objections to the discovery they did not produce. *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, 2026 WL 221295, at *2 (S.D.N.Y. Jan. 28, 2026). Here, Defendants have not produced the documents necessary to take any depositions, and they should no longer be permitted to rely on Local Rule 33.3 to avoid responding to Plaintiffs' interrogatories. The Court's May 2025 ruling was premised on the belief that Plaintiffs would receive additional forms of discovery—such as ESI documents and a 30(b)(6) deposition—in a timely manner and in accordance with the discovery schedule. But Defendants have refused to produce these documents and, in turn, have prevented depositions from moving forward. Defendants cannot refuse to respond to these interrogatories by claiming there are more practical avenues of discovery, and then unilaterally shut down all discovery for 17 months.

Because Defendants' misconduct has prevented Plaintiffs from accessing the information sought through any other means, Defendants should be compelled to fully respond to Plaintiffs' interrogatories within 14 days of the Court's Order, without any reliance on Local Rule 33.3.

### 3.  Lesser Sanctions Would Not Be Sufficient

Defendants should be sanctioned in a way that affects their ability to defend their case. Monetary sanctions alone will not deter the City and would unfairly reward Defendants for their prolonged delay and non-compliance. The U.S. Supreme Court and the Second Circuit have both rejected a "'no harm, no foul' standard for evaluating discovery sanctions." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). Allowing Defendants to make such a delayed production without any case-related consequence will leave them no worse off and Plaintiffs two years delayed in prosecuting their case. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,

24

2019 WL 4727537, at \*28 (discovery sanctions meant "to ensure that a party will not benefit from its own failure to comply."). Defendants stalled this case for nearly two years, and they should be precluded from taking advantage of discovery they long-refused to produce and be forced to respond to interrogatories to give Plaintiffs the information they need in the most expedient way.

### 4. Plaintiffs Should Also Receive Monetary Sanctions

Finally, Plaintiffs should receive monetary sanctions for the fees and costs they have incurred due to Defendants' delay. Rule 37 (b)(2)(c) provides that when a party fails to comply with a court order to provide discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure." Fed. R. Civ. P. 37(b)(2)(C). "This cost-shifting is mandatory 'unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *Delta Airlines, Inc.*, 2015 WL 798031, at \*11 (cleaned up); *see also Silva v. Cofresi*, 2014 WL 3809095, at \*5 (S.D.N.Y. Aug. 1, 2014) (same); *Suarez v. Liquid Blue, Inc.*, 2024 WL 2058166, at \*2 (S.D.N.Y. May 7, 2024) ("Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled.") (cleaned up). As set forth above, Defendants have offered no justification, let alone a "substantial one" for their discovery abuses and their flagrant violations of this Court's orders. Accordingly, Plaintiffs are entitled to reasonable expenses, including attorney's fees and costs.[5]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for sanctions should be granted.

---

[5] In the hope of preserving the Court's resources, Plaintiffs suggest that the parties attempt to meet-and-confer over the appropriate amount of fees and costs, and, if needed, Plaintiffs will file a petition for attorneys' fees and costs with the Court only if the parties cannot reach a resolution. *See Icon*, 347 F.R.D. at 298-99 (ordering parties to discuss settlement of the amount of the monetary sanction before filing fee petition); *Joint Stock Co*, 2019 WL 4727537, at \*30 n. 37 (same).

25

Dated: March 18, 2026                    Respectfully submitted,


                                        */s/ Peter Romer-Friedman*
                                        Peter Romer-Friedman
                                        Patrick David Lopez
                                        PETER ROMER-FRIEDMAN LAW PLLC
                                        1629 K Street NW
                                        Suite 300
                                        Washington, DC 20006
                                        Tel.: (202) 355-6364
                                        Email: peter@prf-law.com

                                        David Berman
                                        PETER ROMER-FRIEDMAN LAW PLLC
                                        16 Court Street
                                        Fl. 33
                                        Brooklyn, New York 11241
                                        Tel.: (347) 229-1514
                                        Email: berman@prf-law.com


                                        *Attorneys for the Plaintiffs and Proposed Classes*