**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

COREY   BRISKIN   and   NICHOLAS
MAGGIPINTO,   on   behalf   of   themselves
and all others similarly situated,

Plaintiffs,

v.

CITY OF NEW YORK, ERIC L. ADAMS,
*individually and in his official capacity as the Mayor of
the City of New York*, RENEE CAMPION,
*individually and in her official capacity as the
Commissioner of the Office of Labor Relations of the City
of New York*, BILL DE BLASIO, and ROBERT
LINN,

Defendants.

Case No. 24-cv-03557-JAV

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR SANCTIONS**

i

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...........................................................................................1

**ARGUMENT** ......................................................................................................................2

I.    Defendants Do Not Dispute Any Facts Documented in the Sanctions Motion .............. 2

II.   Defendants Do Not Respond to Any of Plaintiffs' Legal Authority, and Defendants' Arguments Why Sanctions Should Not be Granted Are Meritless................................ 5

   1. Defendants Cite No Legal Authority For Their Arguments .............................. 6

   2. Plaintiffs Had No Duty to Meet and Confer Over the Sanctions Motion, the Court Did Not Order a Meet-and-Confer, Plaintiffs Did Confer, and Defendants Admit Any Further Conferring Would Have Been Futile ............................................ 6

   3. The Court's Extensions Are Irrelevant to Defendants' Prior Violations.............. 8

   4. Defendants Offer No Argument Against the Proposed Sanctions .....................10

**CONCLUSION** ...................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broad v. DKP Corp.*,
1998 WL 516113 (S.D.N.Y. Aug. 19, 1998) ................................................................................. 6

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979) ....................................................................................................... 9

*Icon Int'l, Inc. v. Elevation Health LLC*,
347 F.R.D. 274 (S.D.N.Y. 2024) .............................................................................................. 9,10

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2019 WL 4727537 ......................................................................................................................... 9

*Rotblut v. 300 E. 74th St. Owners Corp.*,
1997 WL 16063 (S.D.N.Y. Jan. 16, 1997) ................................................................................... 6

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ......................................................................................................... 9

**Rules**

SDNY L.R. 7.1 .................................................................................................................................. 4,6

Plaintiffs submit this Reply in Support of their Motion for Sanctions (ECF Nos. 65-67).

## PRELIMINARY STATEMENT

Defendants' Opposition further underscores why meaningful sanctions are not only appropriate here, but necessary. Defendants do not refute or dispute *any* pertinent facts in Plaintiffs' Memorandum of Law (ECF No. 66) ("Pls. Br.") and the 12-page Declaration (ECF No. 67) ("Decl."). Rather than address Defendants' clear violations of this Court's orders from November 2025 to February 2026, Defendants begin their factual narrative in late February 2026 (after the violations had already occurred) and act as though their prior violations never happened. But Defendants cannot simply wish away their multiple serious violations of clear Court orders. And sanctions are appropriate solely based on Defendants' complete failure to refute any of these facts.

Defendants' legal defenses fare no better. Defendants do not cite a single case or rule to support their legal arguments or oppose the well-established legal authority in the sanctions motion, *see* Defs. Opp. at 4, ECF No. 73 ("Opp."), in violation of the Court's rules requiring legal arguments to be supported by legal authority. Rather than cite any law, Defendants claim Plaintiffs had an obligation to meet and confer with them over the sanctions motion. *Id.* But they cite no rule imposing that requirement. *See id.* They say that the Court ordered a meet-and-confer at the March 19, 2026, hearing and that the Court "encouraged Plaintiffs to consider whether to withdraw their motion". *Id.* at 2. Defendants incredibly make this bold statement *without even having ordered the transcript of that hearing*. But *Plaintiffs* ordered that transcript. And it reveals that such an "order" was never given. Instead, this Court merely told Defendants that the parties should "confer" over the motion, and "[i]f there are live issues that plaintiff wishes to pursue through sanctions motion, then . . . the City should respond to that." March 19, 2026 Tr., Ex. 1 to Decl. of David Berman at 26:19-26: 25. Minutes later, Plaintiffs confirmed in writing that Defendants needed to respond to the motion. But Defendants never responded to that email or sought to further meet and confer.

1

Defendants also argue that the sanctions motion is premature because the Court granted a discovery extension *after* their prior violations. Opp. at 4. But this claim that Defendants should not be sanctioned as they *eventually* made a production (that is still not complete) is exactly the "no harm no foul" approach the Supreme Court and the Second Circuit have forcefully rejected. And incredibly, Defendants offer no authority to counter the black letter law rejecting their argument.

In sum, Defendants cite no relevant facts or law to defend their violations. They simply claim that since they are *now* taking their discovery obligations more seriously, they should not be sanctioned for halting the case for nearly 18 months. But this Court should not overlook such brazen and repeated violations due to Defendants' newfound progress on long-overdue discovery.

## **ARGUMENT**

### I.    **Defendants Do Not Dispute Any Facts Documented in the Sanctions Motion**

Defendants do not dispute a single relevant fact in Plaintiffs' sanctions motion that establishes that Defendants intentionally violated this Court's clear orders and acted in bad faith, including that on February 2, 2026, this Court stated *several times* in open court that Defendants had violated the Court's October 27, 2025 order. Pls. Br. at 10-11 (citing Ex. D at 17:05-17:14, 21:17-21:19, 26:04-26:08, 27:20-28:01). Thus, Defendants have conceded those violations, including based on the following facts documented in Plaintiffs' motion, declaration and exhibits:

- On October 1, 2024, Plaintiffs served their first set of document requests, Pls. Br. at 6; Ex. E, and Defendants responded on December 23, 2024, by stating they were "conducting a search" for ESI and "anticipate producing any responsive documents . . . within 30 days". Pls.' Br. at 6; Ex. G at 7-10. But Defendants did not "conduct[] a search" in 30 days, or make any production. Pls.' Br. at. 6; Decl. ¶¶ 20-23;

- At an October 27, 2025, conference, Defendants told the Court that they would begin a rolling production in November 2025, and the Court ordered Defendants to produce ESI on a rolling basis but, in any event, to complete the production by January 31, 2026. Pls.' Br. at 7-8; Ex. B (Oct. 27, 2025 Tr.), at 15:04-17:05;

- In December 2025, Defendants told the Court they "anticipate making a substantial production from all agencies by the January 2026 deadline imposed by the Court."

2

Pls.' Br. at 8; ECF No. 42 at 2 (Dec. 9, 2026). Despite the Court's order and Defendants' representations, Defendants *did not produce a single document of ESI* by January 31, 2026. Pls.' Br. at 9; Decl. ¶ 27;

- Defendants did not seek an extension or any other relief of the January 31 deadline to complete their ESI production until January 29, and even then, offered Plaintiffs little information on the status of the production. Pls.' Br. at 8-9; ECF No. 48;

- The Court did not grant this extension until February 2 (*after* the deadline had passed with no production), and did so reluctantly after expressing dismay at Defendants' conduct, stating it was "'baffled'" by the conduct and "'very very troubled by how this has been proceeding.'" Pls.' Br. at 10 (quoting Ex. D at 04:09, 17:05-17:10). The Court "'encourag[ed]'" Plaintiffs to consider seeking sanctions and stated several times that Defendants had not complied with orders. Pls.' Br. at 10-11 (quoting 17:05-17:10, 17:11-17:14, 21:17-21:19, 26:04-26:08, 27:20-28:01).

- When seeking their extension, Defendants stated they would "'be able to produce the DANY and Mayor's Office documents well in advance of the end of February 2026.'" Pls.' Br. at 9 (quoting ECF No. 48). When granting that extension after the prior violations, the Court "'reorder[ed] the rolling productions'" and added, "'hopefully the DANY and the office of the mayor documents shall be coming shortly, since the representation is that they are already privileged reviewed and just need to be redacted and produced.'" Pls.' Br. at 10 (quoting Ex. D at 27:20-28:01);

- Despite Defendants' own representation that they could complete their productions from two agencies well in advance of the end of February and the Court's express order of a rolling production, they still did not produce *a single document of ESI* until March 6, 2026. While Defendants represented to the Court on February 2 that several "hundred documents" from DANY and over "1,000 documents" from the Mayor's office were *already* "processed" and were "ready for production," Ex. D at 03:17-05:13, their March 6 production from DANY consisted of only 49 documents spanning 133 pages and was produced only after Plaintiffs filed a letter motion due to the lack of *any* rolling production. Pls.' Br.15; ECF No. 56; Decl. ¶ 50;

- When the sanctions motion was filed on March 18, Defendants had not produced any documents from the Mayor's Office (that they represented they would produce well before the end of February) or OLR. Pls.' Br. at 15-16; Decl. ¶¶ 50-53;

- The Court found it "very concerning" and "appalling" that Defendants failed to disclose to Plaintiffs their use of TAR until the February 2 hearing, Ex. D at 18:06-25:05, and ordered the parties to meet and confer over Defendants' review protocol so Plaintiffs would "have a better understanding of what precisely is happening with respect to the processing of e-discovery." *Id.* at 24:16-25:05. After Plaintiffs sent detailed questions on the review process on February 3 and 10, Defendants refused to provide any details on that process until a March 6 meet-and-confer, and only *after* Plaintiffs sought court intervention. Pls.' Br. at 11-14; Ex. L; Decl. ¶¶ 36-47.

3

Rather than respond to any of these facts, Defendants act as though the relevant narrative begins only when Defendants' new counsel, Zachary Ellis, personally entered his appearance on February 25, 2026. While Plaintiffs do not dispute that Defendants' compliance with Court orders has improved since Mr. Ellis' appearance, and particularly *after* Plaintiffs sought court intervention on March 4, 2026, ECF No. 56, none of facts in Defendants' Opposition address the actual factual basis for Plaintiffs' sanctions motion.[1] As set forth in Plaintiffs' motion and shown above, Plaintiffs seek sanctions due to Defendants' (1) violation of this Court's October 27, 2025 order when they failed to produce a single document of ESI by the January 31, 2026 deadline to *complete* their ESI production;  (2) failure to produce any documents in February 2026, despite representing that they would complete productions from two agencies well before the end of February and the Court's order to make rolling productions; and (3) failure to provide information to Plaintiffs on their TAR review process for over a month after the Court ordered the parties to meet-and-confer over that process. Pls.' Br. at 17-18. Defendants simply ignore the conduct that largely predated Mr. Ellis's appearance. As such, sanctions should be granted based on the undisputed facts described above.

Without citing *any* record evidence, Defendants' description of the facts addresses only: (1) email correspondence at the end of February and a one-week delay in Mr. Ellis's responses due to a two-day trip to his grandmother's house (for which he did not inform Plaintiffs or set an out-of-office message); (2) a meet-and-confer on March 6, 2026 where Defendants finally provided information on their TAR review process after ignoring Plaintiffs' inquiries for a month; and (3)

---

[1] While Plaintiffs appreciate the recent progress in Defendants' ESI review, Defendants still appear to view Court's rules as optional or hortatory. For instance, Defendants did not seek an extension of time before filing their Opposition a day late and they ignored the Court's Individual Rules for seeking an extension in several ways (including seeking it in a footnote of an opposition, not a separate letter motion, and not stating Plaintiffs' position). They then filed a letter response rather than opposition brief and did not include any supporting affidavit or exhibits to support their facts or legal authority to support their legal arguments in clear violation of SDNY L.R. 7.1(a)(1)-(4).

4

the parties' March 19, 2026 discovery conference addressing Plaintiffs' March 4, 2026, motion to compel, *not* this sanctions motion. Opp. at 2. But none of these facts are relevant to Defendants' *prior* conduct that serves as the basis for the sanctions motion. Plaintiffs filed their motion because Defendants brazenly violated multiple court orders from November 2025 (when Defendants were supposed to begin a rolling production) through February 2026 (when they still had not made any rolling production despite a second Court order requiring it). Defendants' Opposition addresses none of this conduct, and the Court should reject their attempt to pretend that it never happened.[2]

## II.    Defendants Do Not Respond to Any of Plaintiffs' Legal Authority, and Defendants' Arguments Why Sanctions Should Not be Granted Are Meritless

Defendants' legal arguments opposing the sanctions motion should also be rejected. First, Defendants cite no legal authority in support of any argument. Second, they do not offer any support for their claim that the parties needed to meet-and-confer on the sanctions motion, and the hearing transcript and their own letter undercuts that very argument. Third, they do not respond to Plaintiffs' well-established authorities that the Court's later grant of extensions does not immunize Defendants from sanctions for their *prior* violations of this Court's orders. Fourth,

---

[2] Defendants' statement that "in mid-February 2026 . . . Ms. Corinthian unexpectedly went on leave from this office," Opp. at 2, is misleading. Ms. Corinthian taking leave was not "unexpected". In her January 29 letter to the Court, she stated she expected to start leave on February 23, 2026. ECF No. 48 at 2. At the February 2, hearing, she stated she was "meeting with [her] supervisors later this week to figure [] out" transitioning the case to others. Ex. D at 25:25-26:03. The Court then directed her to "make sure [new counsel is] very aware of my displeasure at the rate of the e-discovery production, the fact that the City was not in compliance with [the Court's] prior order, and that . . . this deadline is not going to be extended a second time." *Id.* at 26:04-08. Ms. Corinthian was still working on Friday, February 13, 2026, *see* Exs. M & N, which means the earliest her leave started was Tuesday February 17, six days earlier than planned (Feb. 14-16 was a long weekend, Ex. N.). Defendants offer no explanation why, despite this supposed transition occurring the week of February 2, Plaintiffs did not hear from Mr. Ellis until *Plaintiffs contacted Mr. Ellis* on February 24, Opp. at 2; Decl. ¶¶ 40-42, or why he was "just assigned to this matter" and "still getting caught up to speed" on February 26—two days *after* Ms. Corinthian's leave was scheduled to start. Opp. at 2; Ex. O. Defendants' failure to transition the case, despite this Court's explicit order to do so, does not justify their continued noncompliance with the Court's order of a rolling production and to provide information on the TAR process throughout February 2026.

Defendants do not respond to the well-established authority that precluding Defendants from affirmatively using documents they withheld is an appropriate sanction for such discovery abuses. Nor do they respond on the merits to the other sanctions that Plaintiffs seek in their motion.

### 1. Defendants Cite No Legal Authority for Their Legal Arguments

While Defendants spend nearly a whole page citing generic legal standards on sanctions, Opp. at 3, there is not a single legal citation or any application of law in their legal argument section entitled, "Plaintiffs' Motion for Sanctions Should be Denied." *Id.* at 4. Their total failure to offer any legal authority for their argument on why they should not be sanctioned, or to counter Plaintiffs' legal authority, violates this Court's Local Rules requiring "[a]ll oppositions" to provide "A memorandum of law, setting forth the cases and other authorities relied on in support of the motion[.]" SDNY L.R. 7.1(a)(1)-(4). The lack of any legal support for Defendants' arguments or a response to Plaintiffs' legal authorities *alone* supports granting this motion. *Broad v. DKP Corp.*,1998 WL 516113, at *3 n.2 (S.D.N.Y. Aug. 19, 1998) ("While [Rule 7.1] is typically used to place in default parties who fail to respond to an opposing motion in any respect . . . it has also been applied to situations in which a party responds to a motion with papers other than an opposition memorandum of law.") (cleaned up); *Rotblut v. 300 E. 74th St. Owners Corp.,* 1997 WL 16063, at *1 (S.D.N.Y. Jan. 16, 1997) (granting motion as "Defendant may be correct in its assessment . . . but it offers no legal analysis or authority in support of its position . . . . This is unacceptable.").

### 2. Plaintiffs Had No Duty to Meet and Confer Over the Sanctions Motion, the Court Did Not Order a Meet-and-Confer, Plaintiffs Did Confer, and Defendants Admit Any Further Conferring Would Have Been Futile

Defendants claim that the sanctions motion should be denied since the parties did not meet and confer. Opp. at 4. But they cite no legal authority, federal rule, local rule, or rule of the Court's individual practices supporting the proposition that a party must meet and confer with its adversary before filing a sanctions motion. No such authority or rule exists. Moreover, Defendants concede

6

that any such meet and confer would have been futile, stating, "Of course, Defendants do not consent to themselves being sanctioned." Opp. at 3. And they offer no explanation as to what purpose would be served by a meet-and-confer (other than additional delay) when Defendants acknowledge that they "of course" would not consent to any of the relief Plaintiffs seek.

Defendants' claim that the Court "directed parties to meet and confer over Plaintiffs' Motion for Sanctions and encouraged Plaintiffs to consider whether to withdraw their motion, in whole or in part," Opp. at 2, is disingenuous. Defendants offer no citation to a transcript, and when Plaintiffs requested the transcript from Defendants, they did not respond. Berman Decl. ¶¶ 3-5. The Court reporter confirmed Defendants *did not order a transcript* before making this representation. *Id*. ¶¶ 5-8. Once the transcript is reviewed, it is clear the Court made no such order. Rather, Defendants asked whether they should still respond to the sanctions motion, and the Court replied:

> I have not reviewed the motion for sanctions. It came in yesterday. I briefly looked at it. The parties should confer to see how much of this is still live given today's conference and how we're moving forward. If there are live issues that plaintiff wishes to pursue through sanctions motion, then, Mr. Ellis, the City should respond to that. For today, since the motion for sanctions is not properly fully briefed before me, I'm not ruling on it. I only have before me the motion to compel.

Ex. 1 to Berman Decl. at 26:19-27:03. In other words, the Court did not offer a substantive opinion on the sanctions motion, encourage Plaintiffs to withdraw the motion, or order the parties to "meet and confer" before the motion would be considered. Instead, the Court merely responded to Defendants' question and directed them to confer with Plaintiffs to the extent Defendants were uncertain as to whether the motion was still "live," and, if Plaintiffs wanted to proceed with the motion, then Defendants "should respond". *Id.* When the Court entered an order the next day on the outcome of the March 19 conference, it *did not mention the sanctions motion at all*. *See* ECF No. 68.

In any event, Plaintiffs *did* "confer" with Defendants about their view of the pending sanctions motion. As Defendants concede, Plaintiffs reached out immediately after the March 19

7

hearing to tell Defendants their position that Plaintiffs were still seeking sanctions "for past violations" and the sanctions motion "was necessary to address the consequences of those violations." Opp. at 3; Ex. 2 to Berman Decl. But Defendants *did not respond to that email*. Berman Decl. ¶¶10-11. If Defendants had a different view on whether there was still a live dispute or thought it should be discussed at a meet-and-confer, it was incumbent on them to ask. But they did and said nothing, *id.*, perhaps because they "of course" would not consent to sanctions. Opp. at 3.

Defendants' additional argument that Plaintiffs needed to meet and confer with Defendants over their request that Defendants be ordered to respond to Interrogatories also misses the point. *See* Opp. at 4. The parties previously met and conferred on these Interrogatories, which were the subject of a prior motion to compel that Plaintiffs acknowledge was denied. *See* ECF Nos. 26, 29, 31; Pls.' Br. at 23-24. A large part of the Court's reasoning, however, was that "Defendants have, in fact, identified a 'more practical means' to provide this information to Plaintiffs: a Rule 30(b)(6) deposition of a City-designated witness". ECF No. 31 at 8. Because Defendants took nearly 18 months to produce the discovery necessary to take a Rule 30(b)(6) deposition, Plaintiffs now request, as a sanction, that Defendants be required to respond to these Interrogatories. Defendants do not provide any explanation as to why the parties would need to meet and confer *again* on these Interrogatories, particularly when Defendants have acknowledged that they "of course do not consent to themselves being sanctioned," Opp. at 3, and that they "stand behind" their objections to the Interrogatories. *Id*. at 4. Again, a meet and confer would serve no purpose but further delay.

### 3.  The Court's Extensions Are Irrelevant to Defendants' Prior Violations

Finally, Defendants argue that any motion for sanctions is "pre-mature" because the Court later granted their requests for additional time to complete their productions. *Id*. This argument is factually and legally wrong. As to the facts, Defendants conveniently ignore that, when granting Defendants' request for an extension from February 2, 2026 to April 1, 2026, the Court repeatedly

admonished Defendants for violating the Court's October 27, 2025 orders and encouraged Plaintiffs to consider filing a sanctions motion. *See* Ex. D at 17:11-17:14; *id.* at 21:17-21:19. The Court clearly stated that Defendants had violated its orders and did not view the fact that it then set a new deadline to complete the production as making any such sanctions motion premature.

As for the law, Plaintiffs' motion cited clear legal authority showing that the Second Circuit rejects this type of "no harm no foul" approach that condones discovery misconduct if a party later complies with a prior order. Pls.' Br. at 24 (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) ("we, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions that [defendant] would have us apply."), and citing *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *28 (explaining discovery sanctions meant "to ensure that a party will not benefit from its own failure to comply.")); *see also Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 297 (S.D.N.Y. 2024) (granting preclusion because "while a continuance is always a possibility, [Defendants] should not be permitted to upset a discovery schedule which was extremely liberal and to which their adversaries adhered.") (cleaned up). As the Second Circuit has stated, "'[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.'" *S. New England Tel. Co.*, 624 F.3d at 149 (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)). That cautionary tale describes exactly what has happened in this very case. Defendants do not address any of Plaintiffs' legal authority and have offered none of their own. They have not pointed to a single case where a court refused sanctions due to a later production. This Court should not condone the City's "no harm no foul" approach, and the Court's grant of extensions *after* Defendants violated clear Court orders should play no role in the sanctions analysis.

9

#### 4.  Defendants Offer No Argument Against the Proposed Sanctions

Finally, Defendants fail to explain why the proposed remedies are improper. They offer no substantive argument why the Court should not require them to answer the Interrogatories—they only claim (wrongly) that Plaintiffs never conferred over them, *see supra* at 8—and make no mention of the request for monetary sanctions. Opp. at 4. While Defendants argue that the sanction of preclusion is "tantamount to a default judgement," they again offer no authority for this argument, and no further explanation of this unsupported argument. *Id.* Indeed, they offer no authority to challenge Plaintiffs' argument that the Second Circuit and district courts in this Circuit have precluded Defendants from relying on documents they failed to produce as a proper sanctions remedy. Pls.' Br. at 21-23 (citing at least five cases). Nor do they apply the four-factor test that courts in this Circuit apply "'[i]n determining whether preclusion of evidence is an appropriate sanction'". *Id.* at 22 (quoting *Icon*, 347 F.R.D. at 296). Anyhow, preclusion of evidence is plainly not tantamount to a default judgment. Defendants could still defend their case and respond to any documents Plaintiffs introduce, but they would not be allowed to affirmatively rely on documents they withheld for 18 months and for which they disregarded multiple Court orders to produce.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for sanctions should be granted.

Dated: April 15, 2026                              Respectfully submitted,

*/s/ Peter Romer-Friedman*
Peter Romer-Friedman
Patrick David Lopez
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
Tel.: (202) 355-6364
Email: peter@prf-law.com

David Berman

10

PETER ROMER-FRIEDMAN LAW PLLC
16 Court Street
Fl. 33
Brooklyn, New York 11241
Tel.: (347) 229-1514
Email: berman@prf-law.com


*Attorneys for the Plaintiffs and Proposed Classes*

.

11