UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
COREY BRISKIN, et al.,                                            :
                                                                  :
                                    Plaintiffs,                   :
                                                                  :          24-CV-03557 (JAV)
            -v-                                                   :
                                                                  :          OPINION AND ORDER
CITY OF NEW YORK, et al.,                                         :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiffs Corey Briskin and Nicholas Maggipinto (collectively, "Plaintiffs")
filed the instant action against Defendant the City of New York and others
(collectively, "Defendants") nearly two years ago.  ECF No. 5 ("Complaint" or
"Compl.").  Since then, Defendants have missed multiple deadlines to produce
Electronically Stored Information ("ESI") as ordered by the Court.  Plaintiffs now
move for sanctions against Defendants under Rules 16 and 37 of the Federal Rules
of Civil Procedure.  ECF No. 65 ("Motion for Sanctions" or "Mot.").  For the following
reasons, the Motion for Sanctions is **GRANTED IN PART AND DENIED IN
PART**.

## BACKGROUND

On May 10, 2024, Plaintiffs filed the instant action against Defendants,
challenging the lawfulness of the City of New York's policy of denying in-vitro
fertilization ("IVF") benefits to gay male employees and their spouses.  Compl.,
¶¶ 1-4, 100-61.

On October 1, 2024, Plaintiffs served their First Set of Requests for Production and their First Set of Interrogatories. ECF Nos. 67-5, 67-6. Plaintiffs consented to extend the deadline for Defendants to respond to these discovery requests to December 23, 2024. ECF No. 67 ("Friedman Decl."), ¶ 18. Defendants served their responses on that date and, in reply to all requests involving ESI, stated that "they are conducting a search for documents that may be responsive to this request and anticipate producing any responsive documents, subject to the foregoing objections, within 30 days." *Id.*, ¶¶ 18-19. Defendants, however, failed to produce any such ESI within 30 days. *Id.*, ¶ 20. In their responses, Defendants raised various objections to Interrogatories 1, 2, 3, 12, and 13, including that the information sought exceeded the scope of Local Civil Rule 33.3. ECF No. 67-8 at 1-3, 10-11.

Plaintiffs and Defendants subsequently held a meet-and-confer to discuss the issues regarding ESI and interrogatories sometime on or after February 5, 2025. *See* Friedman Decl., ¶¶ 20-22. During that meet-and-confer, Defendants disclosed that, notwithstanding their representation in their Objections that they were conducting a search for responsive documents, they had not begun any searches for responsive ESI. *Id.,* ¶ 22. Defendants further took the position that they would not begin ESI searches until Plaintiffs proposed search terms. *Id.* Concerning the objected-to interrogatories, Defendants stated they were not aware of any specific responsive documents and maintained that, regardless, they would continue to object to the interrogatories because the information sought would be available

either through ESI discovery or produced at a later deposition following the production of ESI.  *See id.*, ¶ 23.

By June 2025, the parties agreed to search terms that would be applied to search the ESI of the Office of Labor Relations ("OLR"), the Manhattan District Attorney's Office ("DANY"), and the Office of the Mayor ("OTM").  *Id.*, ¶ 24.  The parties also agreed on the custodians to be searched at OLR and OTM.  *Id.*, ¶ 25.

On July 24, 2025, the parties requested a six-month extension to complete discovery.  *See generally* ECF No. 32.  On July 28, 2025, the Court granted the parties' request.  ECF No. 33.  On July 29, 2025, the Court entered a Civil Case Management Plan and Scheduling Order that set a fact discovery deadline of July 16, 2026, and scheduled a case management conference for October 27, 2025.  ECF No. 34 at 2, 4.

In August 2025, the parties reviewed "hit reports" on how many documents the search terms hit for each custodian at OLR and OTM.  Friedman Decl., ¶ 25.  Defendants told Plaintiffs that they would provide a similar hit report for DANY, but Defendants never did.  *Id.*, ¶ 26.

On October 27, 2025, the Court held a case management conference at which Defendants represented to the Court that they had "collected" documents and had "started" the e-discovery process.  ECF No. 52 ("Oct. 27 Tr.") at 13:09-23.  When asked about the volume of documents, Defendants answered that they had identified approximately 60,000 potentially responsive documents from OLR but were unsure regarding the other two agencies.  *Id.* at 13:11-16.  Defendants also

represented that they "expect[ed to produce] at least some materials . . . in November." *Id.* at 15:11-12. The Court then expressed concern that no ESI had been produced in more than a year since the initial discovery requests were sent to Defendants. *Id* at 13:24–14:4.

Accordingly, the Court ordered Defendants to immediately begin ESI production on a rolling basis, with the "aim" that all ESI be produced by the end of January 2026 to allow time for depositions and expert discovery to be completed thereafter. *Id.* at 15:2-4, 15:13-21. The Court explained:

> That gives you November, December, January. That's three months to complete the rolling productions that we're talking about, and that would give—February, March, April, May, June—four months, to complete all the depositions, the expert work, and the like. . . .
>
> So where I'm sitting right now, none of that is going to be possible if the major bulk of documents is not rolled out the door by end of January. There just won't be time. There just won't be time to get the work done, so the City has to have that in mind. Now, how you choose to do it, I hear plaintiffs' counsel saying you want to do a relevance review. Whether that's the best use of your time and resources in light of the bulk of documents and whether it might just be better to do a privilege review and withhold the privileged documents, relevance—if you want to put the bulk of your resources into doing relevance review, I'm certainly not going to stop you, but if you're telling me you have resource issues and there's difficulty getting the bulk of documents reviewed in a timely way, then you have to decide how you want to allocate your resources and time. But I'm just telling you what the time frame is going to be for getting these documents out the door.

*Id.* at 16:5-9, 16:15–17:5.

4

At the end of the Conference, the Court warned Defendants: if the City fails to "heed[ the Court's] words" by January, the Court "will be in a position to take action." *Id.* at 29:12-14.

Notwithstanding the Court's order for rolling productions, Defendants had still failed to produce any ESI to Plaintiffs as of January 31, 2026. Friedman Decl., ¶ 27.

On January 29, 2026, Defendants requested a 60-day extension of time to complete production of ESI discovery. ECF No. 48.

The parties appeared for a status conference on February 2, 2026. At that status conference, Defendants were unable to provide the Court with specific details related to documents collected from DANY, OTM, or OLR, including the number of documents collected from each source or the number of documents deemed responsive from each source. ECF No. 49. Defendants, however, represented that at least "several hundred documents" were "ready for production." ECF No. 54 ("Feb. 2 Tr.") at 4:4-5, 4:23. The Court expressed frustration that "of the 75,000 documents that need to be reviewed, so far the City has done a tiny fraction of those—a tiny fraction—when they were due to be completed in January, pursuant to my order." *Id.* at 7:1-5. Counsel for Defendants represented that, of the OLR documents, which comprised the vast bulk of the documents, only a few thousand had gone through relevancy review, and none through privilege review. *Id.* at 8:1-8. Counsel for Defendants also revealed for the first time that Defendants were engaging in a technology assisted review ("TAR") but had no information on which

5

specific tool was being used or how TAR was being employed. *Id.* at 18:6–20:15.

Plaintiffs represented that the undisclosed use of TAR violated prior protocols with

respect to e-discovery that had previously been negotiated by the parties. *Id.* at

22:2–23:19.

The Court admonished:

> So before we even talk about dates, I think we have to
> talk about the process and the protocol, and then you can
> talk about what the timing should be. . . .  But this
> process needs to be put to right first.  There needs to be
> protocols, the protocols need to be followed, and then
> there needs to be rolling productions, which is what I
> ordered originally.  Now we're past your deadline for the
> full discovery production and you've not made a single
> rolling production despite your representations to this
> Court.  So I will entertain sanctions motions if plaintiffs
> are inclined to bring [them].

*Id.* at 21:2-18.

The Court reiterated its order that Defendants produce, on a rolling basis, all

responsive documents collected from DANY, OTM, and OLR, with a new deadline of

March 31, 2026, to complete all ESI productions.  ECF No. 49.

In mid-February 2026, Shemori Corinthian—counsel for Defendants up to

that point—went on leave, and Defendants' case was reassigned to Zachary Ellis.

*See* Friedman Decl., ¶¶ 7, 38-40.

On March 4, 2026, Plaintiffs filed a letter motion to compel rolling production

of ESI discovery, as Defendants had still failed to make a single rolling production

of ESI, and to require Defendants to provide further information regarding

Defendants' use of TAR.  *See* ECF No. 56.  On March 6, 2026, Defendants made

their first production of ESI, consisting of 49 documents from DANY that spanned 133 pages.  Friedman Decl., ¶ 50.

On March 18, 2026, Plaintiffs filed the instant Motion for Sanctions under Rules 16 and 37.  Plaintiffs request that the Court preclude Defendants from using documents produced after January 31, 2026, in furtherance of any defense; order Defendants to respond to Interrogatories 1, 2, 3, 12, and 13 of Plaintiffs' First Set of Interrogatories; and award reasonable attorneys' fees and costs.  ECF No. 66 ("Mem.") at 21, 25.

On March 20, 2026, Defendants requested a three-week extension of time to complete production of ESI discovery.  ECF No. 69.  On March 23, 2026, the Court granted Defendants' request.  ECF No. 70.

On April 17, 2026, Defendants requested a one-week extension of time to complete production of ESI discovery by April 28, 2026.  ECF No. 81.  In their letter motion, Defendants represented that they had made three rolling productions of ESI totaling 2,025 documents from OLR, DANY, and OTM.  *Id.*  Defendants also indicated that they were in the process of finalizing their fourth and final rolling production of ESI.  *Id.*  On April 20, 2026, the Court granted Defendants' request. ECF No. 82.

On April 28, 2026, Defendants requested a two-day extension of time to complete production of ESI discovery by April 30, 2026.  ECF No. 83.  In their letter motion, Defendants represented that they had made a fourth rolling production of

over 2,000 documents earlier that day. *Id.* On April 29, 2026, the Court granted

Defendants' request. ECF No. 84.

## DISCUSSION

"Federal Rule of Civil Procedure 37 governs the district court's procedures for

enforcing discovery orders and imposing sanctions for misconduct." *World Wide

Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012).

Under Rule 37, "[i]f a party . . . fails to obey an order to provide or permit discovery,

including an order under Rule 26(f), 35, or 37(a), the court where the action is

pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). These orders

may include "prohibiting the disobedient party from supporting or opposing

designated claims or defenses, or from introducing designated matters in

evidence[.]" Fed. R. Civ. P. 37(b)(2)(A)(ii). "Instead of or in addition to [such] orders

. . . , the court must order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure,

unless the failure was substantially justified or other circumstances make an award

of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Similarly, under Rule 16, "if a party or its attorney . . . is substantially

unprepared to participate . . . in the conference; or . . . fails to obey a scheduling or

other pretrial order," "the court may issue any just orders, including those

authorized by Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f)(1)(B)-(C). "Instead of

or in addition to [another] sanction, the court must order the party, its attorney, or

both to pay the reasonable expenses—including attorney's fees—incurred because of

any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

"It is well settled that in this court, the standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37." *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024) (citation omitted). "Accordingly, courts apply the *Agiwal* factors when considering sanctions both pursuant to Rule 16 and Rule 37." *Id.* at 286. The *Agiwal* factors are: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (cleaned up). These factors "are not exclusive, and they need not each be resolved against the party" subject to sanctions for those sanctions to be warranted. *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025).

District courts have "wide discretion to impose sanctions for abusing [the discovery] process." *Kyros L.P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023). Since "Rule 37 permits the imposition of 'just' sanctions[,] the severity of sanction must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). Accordingly, the imposition of sanctions should be guided by the purposes of sanctions: "(1) to ensure that a party will not benefit from its own failure to comply;

9

(2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well." *Erdman v. Victor*, 345 F.R.D. 60, 62 (S.D.N.Y. 2024).

Defendants have repeatedly failed to uphold their discovery obligations and, in doing so, have violated the Court's orders. In particular, the Court ordered Defendants to begin rolling productions of ESI in October 2025, with the aim that the bulk of ESI productions would be completed by January 2026. Defendants nonetheless did not make a single ESI production until March 6, 2026.

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13-CV-1896 (RWS), 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015) (citation omitted). Here, that standard is satisfied. Defendants not only failed to abide by the Court's October 27, 2025 order to produce the bulk of responsive ESI by the end of January 2026, but also continuously failed to comply with the Court's October 27, 2025 and February 2, 2026 orders to produce ESI on a rolling basis. In particular, the Court had cautioned Defendants that if they chose to engage in a relevancy review rather than proceed directly to a privilege review, it would need to commit appropriate resources, as such review would not be an excuse for failure to comply with the Court's deadlines. Oct. 27 Tr. at 16:20–17:5. Notwithstanding this warning, the City proceeded with a relevancy

review and had not even begun conducting a privilege review of the bulk of the ESI by the end of January 2026. *See* Feb. 2 Tr. at 5:20–8:23, 25:6-15.

Perhaps most egregiously, Ms. Corinthian represented to the Court that "several hundred documents" were substantially "ready for production" on February 2, 2026. *Id.* at 4:5, 4:23. Yet Defendants failed to produce any ESI until March 6, 2026, Friedman Decl., ¶ 50, after Plaintiffs had again moved to enforce the Court's prior order. Unless Ms. Corinthian misrepresented to the Court that several hundred documents were ready for production on February 2, 2026, the only reasonable inference to draw is that Defendants' month-long noncompliance with the Court's order for rolling productions was willful. The first, third, and fourth factors thus weigh in favor of sanctions generally.

As to the efficacy of lesser sanctions, monetary sanctions are appropriate here. "A court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Icon*, 347 F.R.D. at 290 (cleaned up). "While deliberate and persistent noncompliance renders lesser sanctions inappropriate, the Court must also consider the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the misconduct." *Id.* (cleaned up). Although Plaintiffs seek to preclude Defendants from using certain discovery and to compel Defendants to respond to certain interrogatories, such measures are unnecessary since Defendants' delay will not ultimately prejudice Plaintiffs on the merits. Indeed, as of early May 2026, Defendants have produced almost the entirety of their ESI discovery. To the extent

11

Plaintiffs need more time to complete depositions to obtain information related to the objected-to interrogatories, the Court has already informed Plaintiffs that it would grant such requests. Accordingly, monetary sanctions are presently sufficient to deter any further misconduct in this case.

### CONCLUSION

Accordingly, the Motion for Sanctions is **GRANTED IN PART AND DENIED IN PART**. The Motion for Sanctions is **GRANTED** to the extent Plaintiffs seek recovery of the reasonable expenses and costs, including attorneys' fees, that they have incurred due to Defendants' failures to comply with this Court's orders. Otherwise, the Motion for Sanctions is **DENIED**.

The parties are directed to discuss settlement of Plaintiffs' expenses and costs, including attorneys' fees, at their earliest convenience. If those efforts are not successful, Plaintiffs shall file within 30 days, via letter motion, a fee application supported by declarations or affidavits, and evidence of contemporaneous time entries that relate specifically to the efforts to obtain the discovery at issue following the issuance of the Court's orders.

The Clerk of Court is directed to terminate ECF No. 65.

SO ORDERED.

Dated:  May 11, 2026
         New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

12